## SHORTRIDGE v. UTAH SAVINGS & TRUST CO.
### No. 174.

Circuit Court of Appeals, Tenth Circuit.
April 21, 1930.

Reuben G. Hunt, of San Francisco, Cal., Edward F. Richards, of Salt Lake City, Utah, and E. J. Torregano, of San Francisco, Cal., for appellant.

James Ingebretsen, William W. Ray, Athol Rawlins, and J. M. Christensen, all of Salt Lake City, Utah, for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

This is an appeal from the dismissal of the trustee's petition in bankruptcy against the Utah Savings & Trust Company, which was conducting a banking business at Salt Lake City, herein referred to as the bank, for an order to show cause why a deposit balance in the bankrupt's account should not be paid to the trustee. The dismissal was ordered on the ground that the bankruptcy court was without jurisdiction to enforce the payment, and that the bank was entitled to have its adverse claim to the fund adjudicated in a plenary suit.

The trustee filed a verified petition on which a formal order to show cause was issued. The bank challenged the jurisdiction, of the court by motion, supported by the affidavit of its assistant cashier. The controversy was determined upon the petition and motion. There was no reply to the showing of the bank and for that reason the facts there alleged control, especially as they differ from the averments of the petition. In re Gill (C. C. A.) 190 F. 726.

The adjudication of the bankrupt occurred in the Northern district of California, on a petition filed September 7, 1928, and the order in question was sought in ancillary proceedings in the Utah district. The trustee was entitled to the same remedies as in the court of original jurisdiction. Lazarus v.

Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305.

The bankrupt had a deposit and checking account in the bank, the balance at the date of the filing of the petition being $198.54. The bankrupt deposited for sale with the bank fifty shares of stock in the Bancitaly Corporation, and they were sold for the bank's account in New York, on September 5, 1928. The bankrupt on that date was entitled to credit for the sale proceeds of $7,-243.23, in a correspondent bank. On various dates in June, August, and September, 1928, and prior to bankruptcy, the bankrupt indorsed to and deposited with the bank a check and six drafts, aggregating $2,896.08, and received credit therefor in the said deposit account. The trustee alleges the indorsements to the bank were made without restriction, and he was allowed to draw against the deposits at will, that the deposit slips showed the credits were provisional only until the proceeds were collected, and at the time the bankrupt was charged with these items on the collection ledger of the bank. The bank alleges likewise that the check and drafts were so indorsed, deposited, and charged, and further that the deposits were made upon the express understanding and condition that the credits were provisional or conditional only, and the bank at all times retained in its hands or control sufficient funds of the bankrupt to offset any provisional credit given for the check and drafts, that the balance in the account was allowed to be reduced to $198.54, only because the Bancitaly stock had been sold and the proceeds credited, and it claims the right to set off against the proceeds and the funds of the bankrupt in its hands the debits of the dishonored check and drafts, under section 68, of the Bankruptcy Act (11 USCA § 108).

An additional deposit of $11.25 appears to have been made in his account on January 22, 1929, but its source is not disclosed. The bank also charged the account with $25.58 as interest on deferred collections, and with $8.04 as expense of insurance and telegrams.

The check and drafts were after bankruptcy returned unpaid and charged to the deposit account. The total credits therein amounted to $7,453.02. Of this amount the bank delivered to the trustee $4,523.32, but declined to turn over the balance of $2,929.-70, having charged the account with the check and drafts and the minor charges incident to them. The trustee claims the right to recover this deposit balance by summary order. The bank asserts the privilege of a plenary suit to determine its adverse claim to the same.

A bankrupt's estate vests in his trustee at the date of the petition in bankruptcy. Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154. The right of the trustee to recover the property as of that date is clear, but the remedy to be pursued for the purpose has been the subject of controversy. In the case of May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870, where the trustee sought the restoration of property in the custody of assignees, it was again declared that "the filing of a petition is a caveat to all the world and in fact an attachment and an injunction." And it was ruled "that property or money held adversely to the bankrupt can only be recovered in a plenary suit and not by a summary proceeding in a Bankruptcy Court, * * * but property held or acquired by others for the account of the bankrupt is subject to a summary order;" also that "any person acquiring an interest in the property of the bankrupt * * * adverse to the creditors, after the filing of a petition with notice of it, may be directed to surrender the property thus acquired by summary order of the Bankruptcy Court." It was said the rule applies "where a bank secures payment of its debt by setting up its lien or right of counterclaim against a deposit account of the bankrupt or the bankrupt's assignee, created subsequent to the filing of the petition"; and "the court has jurisdiction to inquire into the claim for the purpose of ascertaining whether the summary remedy is an appropriate one. * * *" There were citations to show an exception to the rule of requiring assignees to account, where there is an adverse claim arising before the filing of the petition.

These principles suffice to rule this case. The bank claims that the right to charge the deposit in question with the dishonored check and drafts arose before bankruptcy, by virtue of the condition attached to the credits, the indorsement of them to the bank, and the charge made at the time in the collection register. We are not called upon to decide whether the bank may ultimately prevail. The whole question is whether it asserts an adverse claim to the deposit, antedating bankruptcy. A like principle was involved in Re Gill, supra, where before bankruptcy a set-off was charged against a deposit by a bank. If the adverse claim arises thereafter, the deposit is recoverable by a trustee upon a summary proceeding. May v.

Henderson, supra. The contention of the bank in this case reaches back to the date the check and drafts were indorsed, deposited, and charged to the bankrupt. There is no suggestion that the adverse claim is asserted in bad faith. We therefore should regard it as a real substantive controversy. The trustee insists the title to the paper deposited passed absolutely to the bank. City of Douglas v. Fed. Reserve Bank, 271 U. S. 489, 46 S. Ct. 554, 70 L. Ed. 1051; Burton v. United States, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482. However, the question here is not whether this is so, but whether a substantial controversy is presented, entitling the bank to plenary litigation for the adjudication of its claim.

A guiding rule is well stated in Re Midtown Contracting Co. (C. C. A.) 243 F. 56, at page 62, where it was said:

"The courts have held in numerous cases that a stranger to the proceedings in bankruptcy, who sets up an adverse title to property which is claimed by the trustee as assets of the bankrupt, cannot be compelled to submit his claim to adjudication in a summary proceeding in the court of bankruptcy provided his claim is made with the apparent intention of defending it in good faith and is not merely colorable, but is entitled to be heard in a plenary suit."

And again, at page 63 of 243 F.:

"If there is a real question either of law or of fact, the claimant need not submit it to the court of bankruptcy, unless he consents to do so. * * *"

Our conclusion is that the bank in this case asserted an adverse claim to the deposit, and that the District Court was right in dismissing the proceeding. The order appealed from is therefore affirmed.