## In re WALTHAM WATCH CO.
### No. 121–50.

United States District Court
D. Massachusetts.
Aug. 15, 1950.

Harry Bergson, Sr., Boston, Mass., for Reconstruction Finance Corporation.

John N. Worcester, Boston, Mass., for James L. Crawshaw.

Jacob J. Kaplan, Boston, Mass., and C. Keefe Hurley, Boston, Mass., trustees, pro se.

SWEENEY, Chief Judge.

On July 10, 1950, this Court on the Trustees' petition granted authority to them to process and market the debtor's inventory, and specifically ordered the Reconstruction Finance Corporation to deliver to the Trustees all of the debtor's property in the RFC's possession under Sections 2, sub. a (15), 115, and 116(3) of the Bankruptcy Act, 11 U.S.C.A. §§ 11 sub. a(15), 515, 516 (3). By subsequent order a deadline was set as of 4:00 P.M. on August 8, 1950. The RFC filed a motion for a stay of the order of July 10 which this Court denied, and on appeal to the Court of Appeals a similar motion was denied on August 7, 1950. At ten minutes of four on the afternoon of August 8, the local branch of the RFC received a telegram from the Secretary to the Board of Directors of RFC in Washington withdrawing all authority from anyone in this district to draw on the funds involved. On that same date the local branch of the RFC tendered all property, other than the collateral cash, which on the Court's order the Trustees refused to accept. As a result of the defiance of this Court's order these contempt proceedings have been brought against the Corporation and Crawshaw, its local acting manager.

Counsel for RFC state the well settled proposition that a court in bankruptcy has summary jurisdiction only over such property of the debtor as is within the debtor's actual or constructive possession at the time the petition in bankruptcy is filed, and that rights to property not in the debtor's possession on this date must be adjudicated in a plenary proceeding. Taubel-Scott-Kitzmiller Company v. Fox, 1924, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; Shortridge v. Utah Savings & Trust Co., 10 Cir., 1930, 40 F.2d 328; City and County of Denver v. Warner, 10 Cir., 1948, 169 F.2d 508. However, in the process

of applying this proposition to a reorganization proceeding, the Eighth Circuit in Duda v. Sterling Mfg. Co., 8 Cir., 1949, 178 F.2d 428, 434, stated: "The jurisdiction of the bankruptcy court in Chapter X proceedings to protect and preserve the property of the bankrupt estate was not in question and could not be questioned. * * * Having jurisdiction as a court of equity of a proceeding for the protection of the property of the bankrupt estate, without which it was impossible for reorganization to proceed, the court necessarily had the power and the duty to determine all other issues incident to the main action and necessary to its final determination."

The power of the reorganization court to restrain a creditor of the debtor from disposing of property pledged to him and placed in his possession prior to the filing of the petition for reorganization is founded on the duty of the court to preserve the estate of the debtor. And this power can be exercised summarily on an order to show cause. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island and Pacific Railway Co., 1935, 294 U.S. 648, 55 S. Ct. 595, 79 L.Ed. 1110; In re Cuyahoga Finance Co., 6 Cir., 1943, 136 F.2d 18; In re International Power Securities Corporation, 3 Cir., 1948, 170 F.2d 399. There is no reason why its duty to preserve the debtor's estate does not also empower this Court to authorize such use of pledged property as will not alone enhance its value, and therefore the creditor's security, but is also necessary to the maintenance of the debtor's solvency.

■ It is perfectly apparent that, while the RFC may not be apprehensive about a possible loss to it, yet RFC is very much concerned with possible losses to competitors of Waltham and competitors of its customers. RFC has offered to *allow* the Court's Trustees to conduct a sale of the inventory under some fantastic arrangement which would require RFC's approval of each sale, would dole out the money necessary to process the inventory, and would allow the RFC to control the price at which the inventory might be resold by the retailers to the consumers. Whether or not this would be a violation of the antitrust laws it is not necessary to pass upon. To accede to such a proposition would be to make the courts subservient to a temporary governmental agency. Actually in my opinion their conduct will cause a loss to the RFC, for if these watches are sold on the auction block instead of by the orderly procedure which the Trustees intend to adopt, the RFC will suffer in common with all other creditors. In this connection I should think that the Directors of the RFC would ponder on the question of their personal liability to the RFC for causing such a loss, or for causing the loss which is going to be felt by the Corporation in paying the compensatory fine which has been assessed in open court today. While the Court does not pass upon its right to punish the Directors personally in these proceedings, it nevertheless feels that their conduct has been extremely contemptuous. However, ancillary proceedings may be taken in any district in which the individuals might be found, and it may be necessary to do this. I have levied against the RFC a compensatory fine of $50,000 with the order that it be paid forthwith, and I have retained further jurisdiction of this matter for the purpose of either making an adjustment to conform to actual losses or to increase further the fine. Interest at the rate of 6% per annum is to run, and in the event of a complete failure to pay any fine levied such amount as is then due shall be deducted from the claim of the RFC against the Waltham Watch Company.

■ I have today authorized the Trustees to borrow up to $1,000,000 on Trustees' certificates, which shall be a lien prior to any other on the assets of the Waltham Watch Company. I have also signed an order pursuant to the provisions of Rule 70 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which will divest the RFC of control over the collateral cash and vest it in the Trustees. The Trustees have been empowered to enter this order in the event that their efforts to negotiate the Trustees' certificates are impeded or fail for other cause.