## In re MANNINGTON POTTERY CO.
### No. 232–F.

United States District Court
N. D. West Virginia, Fairmont Division.
April 17, 1952.

Tusca Morris, Fairmont, W. Va., for RFC.

Wm. P. Lehman, Fairmont, W. Va., for New York Terminal Warehouse, Inc.,

Thomas A. Hite, Mannington, W. Va., for Wm. T. Nutter, trustee.

Earl S. Goodwin, Fairmont, W. Va., for Automatic Sprinkler Co., Sutter Roofing Co. and Moore Electric Co.

George W. May, Fairmont, W. Va., for Pritchard Supply Co.

Howard Caplan, U. S. Atty., Clarksburg, W. Va., for F. Roy Yoke, Collector of Internal Revenue.

Stathers & Cantrall and John R. Morris, all of Clarksburg, W. Va., for Sutter Roofing & Metal Co.

WATKINS, District Judge.

This case is before me upon petition for review of an order of the referee entered herein on the 16th day of May, 1951, in the bankruptcy proceeding of Mannington Pottery Company, a corporation.

Mannington Pottery Company was a large manufacturer of sanitary bowls and tanks at Mannington, W. Va. The pottery plant had operated successfully for many years but its equipment had become obsolete and inefficient. In the early part of 1949 two new modern kilns were installed which were paid for by borrowing $250,000 from the Reconstruction Finance Corporation, hereinafter referred to as petitioner. This loan was secured by a deed of trust lien upon the plant and equipment. From these new kilns, the company was able to get only a small percentage of grade A ware. The bowls would crack or otherwise become defective in going through the kilns. Substantial losses followed, and on April 14, 1949, the company filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., in this court. Petitioner had much money invested in the plant and was anxious to get it in operation promptly in order to get the kilns adjusted so that grade A ware could be produced. Petitioner loaned the trustees $150,000 as working capital, taking trustee certificates as security. The trustees operated the plant, but neither the trustees nor the manufacturer of the kilns were able to find the trouble. The production of defective ware continued and it was necessary for petitioner to advance an additional $25,000 to the trustees as working capital. Losses continued, and on November 17, 1949, the debtor was adjudicated a bankrupt and the case was referred to the referee for liquidation. The plant was purchased by petitioner for $413,000. Petitioner was allowed to apply its liens against the purchase price and required to pay only prior liens and its proportionate part of the costs. Petitioner is not satisfied with the priority of liens and method of allocation of proceeds of sale as ordered by the referee and filed a petition for review alleging 22 points of error. At the time of argument on the review before the District Judge, counsel for the petitioner stated that it now relied on only 4 points of error. The facts and the law as I find them upon each of these four subjects follow:

### Warehouseman's Lien.

■ Chapter X, Sec. 257 of the Bankruptcy Act, U.S.C.A. Title 11, Sec. 657, provides that trustees in a corporate reorganization proceeding have the right to immediate possession of all property of the debtor. Chapter X, Sec. 111 of the Bank-

ruptcy Act, U.S.C.A. Title 11, Sec. 511, grants to the court for the purpose of this chapter, " * * * exclusive jurisdiction of the debtor and its property, wherever located." The courts have held that such trustees are entitled to immediate possession of all pledged property in the hands of a pledgee or warehouseman. Reconstruction Finance Corporation v. Kaplan, 1 Cir., 185 F.2d 791; In re Waltham Watch Co., 1951, D.C.Mass., 95 F.Supp. 229; In re Waltham Watch Co., D.C.Mass., 1950, 92 F. Supp. 871; Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; In re Prudence-Bonds Corp., 2 Cir., 77 F.2d 328; In re Moulding-Brownell Corp., 7 Cir., 101 F.2d 664; In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 117 F.2d 976.

The order of April 14, 1949 authorized the trustees to take possession of debtor's property and also enjoined and restrained all creditors and other persons "from doing any act or thing whatsoever to interfere with the possession or management by said * * * trustees of the property and assets of the within estate, * * *".

Mannington Pottery Company was the owner of a large amount of raw material and fittings used in the manufacture of its vitreous products, which the New York Terminal Warehouse Company was holding as warehouseman to secure a lien held by American Business Credit Corporation. Because of the refusal of both companies to turn over such materials to the trustees it became necessary for the trustees to cease operation of debtor's plant. Upon motion of trustees the court issued a rule against both companies and their employes to show cause why they should not be held in contempt of court and, punished for their refusal to turn over such property in violation of the injunction order. A hearing was had on such rule, and when it became apparent to New York Terminal Warehouse Company and American Business Credit Corporation that they must obey the order of the court or be punished therefor, they announced to the court that they would surrender all such materials to the trustees, and this was done. They surrendered this property to the trustees in order to save themselves from being adjudged in contempt of court and punished accordingly.

In the petition asking for the rule the trustees stated "That the rights of neither the New York Terminal Warehouse nor the American Business Credit Corporation will be in any manner impaired by the surrender of such property * * *". At the hearing the court assured both claimants that their interests in the property would be protected and that their rights would not be impaired. The formal entry of an order transferring the lien on the property to the proceeds of sale was for some reason overlooked, perhaps on account of assurance given to the claimants from the bench at the time, that their rights would not be prejudiced by turning over the pledged property.

 The referee allowed New York Terminal Warehouse a warehouseman's storage lien first in priority on the proceeds of sale of these materials in the amount of $2,734.95, and allowed American Business Credit Corporation a lien second in priority in the amount of $27,740.96 by reason of its warehouse receipts covering the same materials. In its petition for review petitioner claims that the warehouseman lost its lien by surrender of possession of the pledged property. This claim is so obviously without merit that a mere statement of the facts completely answers such contention. Involuntary surrender of possession of stored goods does not result in the loss of a lien by a warehouseman. Here the surrender of the stored goods was involuntary under threat of punishment for contempt of court. Even had there been no threat of punishment for contempt of court a waiver of the lien would not be implied from that fact alone. Before a waiver of lien may be implied from the mere surrender of possession to bankruptcy trustees, there must be circumstances indicative of a waiver of the lien claim by the warehouseman. If the injunction or turnover order had been invalid, the warehouseman was obliged to obey it. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. Cases in which

the courts have held that so-called possessory liens were not lost where the pledgee surrendered the property to trustees in corporate reorganization proceedings are cited above.

On March 9, 1950, the referee entered an order fixing priority of liens, in which the lien of the warehouseman on the materials pledged was given priority ahead of petitioner. No petition for review was filed to this order. The record shows that petitioner not only acquiesced in the allowance of this claim before the referee but that it filed a petition on March 25, 1950, in which it asked that, as part of the purchase price of the whole property, it be directed to pay the sum of $2,734.95 to the bankruptcy trustee to discharge this particular claim of New York Terminal Warehouse, thereby acknowledging this lien to be superior to its own trustee certificates lien insofar as these pledged materials were concerned. Thereafter, on April 3, 1950, the referee ordered the payment of such claim as a lien prior to the trustee certificates held by RFC. No objections were made, and no petition for review has been filed by anyone to this order. That order remains in full force and effect, but the trustee has never made payment thereunder.

Petitioner purchased the $27,740.96 claim of American Business Credit Corporation, holder of the warehouse receipts upon this same material. American Business Credit Corporation joined with the warehouseman in refusing to turn over this material to the trustee, and both were cited for contempt and both then agreed to surrender the material to the trustees. While petitioner claims that the warehouseman lost its lien by this arrangement, it does not make a similar claim in its appeal that American Business Credit Corporation, its assignor, also lost its lien. The effect of this would be to put the lien of the holder of the warehouse receipts ahead of the lien of the warehouseman for his services in storing the materials.

The referee correctly allowed both liens, and correctly allowed the warehouseman's lien of $2,734.95 as first in priority, and American's lien of $27,740.96 by reason of the warehouse receipts as second in priority upon the proceeds of sale of such materials. There was no waiver of either lien, and even though there had been a waiver under a mistake of fact, justice and equity would warrant the bankruptcy court in declaring an equitable lien on the property surrendered to the trustee under these circumstances. 8 C.J.S., Bankruptcy, § 242, p. 868.

### Internal Revenue Lien.

On March 15, 1949, prior to the filing of the petition for reorganization on April 14, 1949, the Collector of Internal Revenue filed a notice of tax lien in the office of the Clerk of the County Court of Marion County, West Virginia, against Mannington Pottery Company in the amount of $11,879.23. Thereby the government obtained a lien upon all property and rights to property, both real and personal, owned on March 15, 1949, by Mannington Pottery. Title 26 U.S.C.A. §§ 3670–3679; West Virginia Code, Ch. 38, Art. 10, Sec. 1; In re Dartmont Coal Co., 4 Cir., 46 F.2d 455. On May 24, 1949, within the time permitted, the Collector timely filed a proof of claim of $66,764.30 for taxes in the Clerk's office of the Federal Court in the reorganization proceeding. Included in this claim was the amount of $11,879.23 mentioned above. While this proof of claim did not set forth the notice of tax lien mentioned above, it stated that the United States did not hold any security for the debt "except statutory liens". The government urges, and I think properly, that these words called attention to the trustee and the referee that there were statutory liens to consider with reference to this particular claim. The recorded tax lien is itself sufficient knowledge and notice to the trustee in bankruptcy. A Collector of Internal Revenue may rely upon the recorded tax lien and no actual filing of the claim is necessary to protect the interest of the United States. It is the trustee's duty to search for tax liens, because the assets pass to him subject to such liens. The Chandler Act of 1938 changed the 1898 Act by providing that tax claims, as distinguished from tax liens,

512

must be proved and filed in order to participate in the distribution of the bankrupt estate to unsecured creditors. But the filing of a formal claim in bankruptcy is still not essential to the preservation of a lien. Bolling v. Bowen, 4 Cir., 118 F.2d 59, 62; De Laney v. Denver, 10 Cir., 185 F.2d 246; Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658; Reconstruction Finance Corporation v. Cohen, 10 Cir., 179 F.2d 773, 776; Merchants' and Mechanics' Bank v. Sewell, 5 Cir., 61 F.2d 814; Collier on Bankruptcy, 14th Ed., Vol. 4, Par. 67.20, p. 157; Remington on Bankruptcy, 4th Ed. Supp., Vol. 6, Sec. 2808. Only with respect to sharing in the general assets as to unsecured balance of its claim is it necessary to file a proof of claim.

■ In some unexplained manner, the trustee and the referee inadvertently overlooked "statutory liens", mentioned by the Collector in his proof of claim, and on the 9th day of March, 1950, the referee entered an order fixing the priority of liens without giving lien status to this tax lien. The government was not then represented by counsel in this proceeding. There was no consideration given to the matter by the referee, but the lien status of the claim was simply overlooked. On March 10, 1950, RFC became the purchaser of the plant and equipment for the sum of $413,-000. Nothing was done by anyone about the matter until November 8, 1950, when the trustee in bankruptcy discovered the recorded tax lien and called the error to the attention of the referee. In a written report, the trustee asked that the error be corrected and that the federal tax lien be given its proper priority. Shortly thereafter the Collector of Internal Revenue who had been handling the matter himself asked the United States Attorney to appear in the proceeding. An amended and supplemental proof of claim was then filed with the referee on February 14, 1951. This supplemental proof of claim made no additional claim as to the amount of tax indebtedness and added no new items. It merely set forth the tax items, proof of which had previously been made, and pointed out that $11,879.23 of the taxes were duly recorded as a tax lien. A certified copy of the notice of tax lien filed in the Marion County Clerk's office was attached. On May 16, 1951, prior to any distribution of proceeds of sale, the referee, on his own motion, and on the motion of the trustee (and not upon the motion of the government) modified his decree of March 9, 1950, insofar only as to give proper lien priority and status to this tax claim and insofar as said order failed to fix the proper priority of lien debts subsequent to such tax lien. The referee correctly held that the amended proof of claim filed on February 14 constituted such amendment to its proof of claim theretofore timely filed as could be made after the expiration of the six-months' period for filing claims. See Collier on Bankruptcy, 14 Ed., Sec. 57.11 as follows: "Amendments are allowed in the discretion of the court, as the justice of the case demands. * * It is well settled that if there is upon the record in the bankruptcy proceeding, within the six-months' period prescribed by Section 57, sub. n [11 U.S.C.A. § 93, sub. n], anything sufficient to show the existence, nature and amount of claim, it may be amended even after the expiration of the period. Globe Indemnity Company, etc., v. Keeble, 4 Cir., 20 F.2d 84."

■ Here the referee correctly held that the amended claim was not a new or different claim, and that the government did not waive its security by its neglect to show that notice of the tax lien had been duly docketed in Marion County; that since the estate had not been administered and the funds disbursed, the doctrine of laches did not apply; that under Section 2, sub. a(2) of the Bankruptcy Act, U.S.C.A. Title 11, Sec. 11, sub. a(2), the referee had the right, of his own motion, to correct this mistake and error; and that it was the duty of the bankruptcy court to do equity by reconsidering such claim and giving it its undisputed lien priority. There is no merit in the argument of the petitioner that the government waived its tax lien. Under the circumstances related above, including the reference to the statutory lien in the original proof of claim, there was no waiver of

the security. Where no reference is made in the proof of claim to "statutory liens", as was done here, and where the proof as an unsecured claim is made inadvertently, Hartford Accident & Indemnity Co. v. Coggin, 4 Cir., 78 F.2d 471, or in excusable ignorance of either facts or law and without fraudulent intent, the courts will not imply an intent to surrender or waive the security, but allow the creditor to amend his proof, to have the value of the security determined and to prove the excess only. In re Prindible, 3 Cir., 115 F.2d 21, "The decision whether or not a creditor should be granted relief and allowed to change his position is largely a matter of judicial discretion." Collier on Bankruptcy, 14th Ed., Sec. 57.07. See also the case of Maxwell v. McDaniels, 4 Cir., 195 F. 426.

 It is strongly urged that the referee did not have the right to correct his former decree, and with that view I am unable to agree. A referee has inherent right, upon his own motion to correct a former decree made inadvertently. The referee has the same power as any other court to reconsider and amend his orders entered through mistake or inadvertence. Matter of Pottasch Brothers Co., Inc., 2 Cir., 79 F.2d 613, 101 A.L.R. 1182, Collier on Bankruptcy, 14th Ed., Sec. 38.09. Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which gives the court authority to relieve a party from a judgment or order taken against him through mistake or inadvertence or excusable neglect has been held to apply on motion before a referee for the vacation of an order made by him. LaBarbera v. Grubard, 2 Cir., 112 F.2d 738.

Under General Order 21(6), 11 U.S.C.A. following section 53, when a creditor's claim has been *disallowed* by the referee, such creditor may not petition the referee for reconsideration but may petition for a review by the judge. Here the claim of the government was not disallowed but because of an oversight or mistake its proper priority was overlooked. It was not a case where the referee considered the tax lien claim, and, after hearing and considering the lien claim upon its merits, decided to disallow it. It was simply overlooked and its true priority as established by uncontradicted facts never considered by the referee. Lien priority (by reason of the notice of tax lien filed in the clerk's office) was not disallowed. In failing to give it its proper priority as a tax lien in the order of March 9, 1950, the referee did not understand that such notice of tax lien was on record in the clerk's office, or that tax lien priority was claimed.

The original proof of claim was filed by the Collector by mailing same to the clerk of this court at a time when he was not represented by counsel in this proceeding. It was filed by the Collector in a reorganization proceeding under Chapter X, and not in an ordinary bankruptcy liquidation proceeding. When the company was unable to reorganize after efforts to operate the plant at a profit had failed, it was adjudicated a bankrupt. The referee did not require the creditors to file new proofs of claim in the liquidation proceeding before him, but used the proofs of claim previously filed in the reorganization proceeding. Some creditors filed new or amended claims, but others did not.

It was not a case where the creditor petitioned for a reconsideration of his claim, but where the referee, of his own motion, corrected what he believed to be, and undoubtedly was, an error and oversight, concerning a matter not previously considered on its merits because of such mistake and inadvertence.

Petitioner does not deny that a notice of a federal tax lien in the amount of $11,879.23 was recorded in the proper county clerk's office. It does not deny that at and prior to the entry of the referee's order on March 9, 1950, the government had a valid tax lien. It does not deny that it had constructive notice of such lien by virtue of such recordation, such as to make any lien subsequently acquired by it inferior thereto. It does not deny that on and prior to March 9, 1950, it had actual knowledge of the existence and amount and priority of such tax lien. Yet, if the RFC is successful in defeating the proper priority of the tax lien, because of this mistake, it will have the effect of placing

a subsequently acquired lien ahead of the tax lien.

Petitioner also complains that no petition was filed by the claimant to amend the claim; that no notice was given to it and that it had no opportunity to resist such amended claim. I find no merit in these contentions. It was not necessary for the claimant to file a petition because the action was taken by the referee on his own motion. The referee found, and the record supports the fact, that counsel for petitioner did have notice of the filing of the amended claim; did file on April 7, 1951, prior to the allowance of such amended claim, written objections and argument against such amended claim; and that a copy of the proposed order of May 16, 1951, allowing such amended claim was exhibited to counsel for petitioner prior to the entry thereof. For the reasons stated above the action of the referee with reference to the tax lien must be affirmed.

### Trustees' Certificates.

It is contended by petitioner that the trustee certificates issued in the reorganization proceeding have priority over existing liens. The referee gave the certificates lien priority, but subsequent to existing liens.

Prior to filing its petition for reorganization on April 14, 1949, the debtor had been negotiating with petitioner for additional working capital. Petitioner was already holding a loan of $238,000 against the pottery plant. As soon as the trustees were appointed, RFC, the petitioner herein, agreed to loan them $150,000 upon trustee certificates to bear four per cent interest, for the operation of the plant. Thereafter on April 29, 1949, counsel for the petitioner met with the trustees and the court, at which meeting an order was agreed upon and entered authorizing such certificates. Mannington Pottery was the only industry in the community of Mannington, W. Va. It gave employment to more than 200 people. Desirous of complying with the intent of Congress by helping to rehabilitate a defunct business and to maintain the economy of the community, as well as to protect its large loan investment, RFC had agreed to purchase and did purchase all of these certificates at face value. No notice was given to any creditor, secured or unsecured, of the entry of such order, or the terms under which the money was loaned, and there is no evidence in the record that any creditor had knowledge of same.

Chapter X, Sec. 116 of the Chandler Act of 1938, 11 U.S.C.A. § 516, provides:

"Upon the approval of a petition, the judge may, * * * (2) authorize a receiver, trustee, or debtor in possession, *upon such notice as the judge may prescribe* and upon cause shown, to issue certificates of indebtedness for cash, * * * upon such terms and conditions and with such security and priority in payment over existing obligations, secured or unsecured, as in the particular case may be equitable;" * * *.

Prior Sec. 77B, sub. c 3 of the Bankruptcy Act, 11 U.S.C.A. § 207, sub. c (3) read as follows:

"(c) Upon approving the petition * * * the judge * * * (3) may, for cause shown, authorize * * * the trustee or trustees, if appointed, to issue certificates for cash * * * for such lawful purposes, and upon such terms and conditions and with such security and such priority in payments over existing obligations, secured or unsecured, as may be lawful in the particular case;" * * *.

Petitioner relies strongly upon the case of In re Prima Co., 7 Cir., 88 F.2d 785, 116 A.L.R. 766, in which it was held that under Sec. 77B, sub. c (3) of the former Bankruptcy Act, the court may authorize the issuance of trustee certificates with priority over existing mortgages where the facts warrant. There the amount of such certificates was about three-fourths of one per cent of the value of debtor's property; and it appeared that perishable personal property the value of which was three times the amount of such certificates, might be saved by use of the proceeds. The court pointed out that the exercise of its power in corporate reorganization proceedings under the Bankruptcy Act calls for careful, cau-

tious, and considerate action by the court, which should not grant such without mortgage bondholder's consent, unless petitioner's case is strong, or if the certificates are saleable without being made prior to existing first mortgage liens. Here the certificates were saleable to petitioner without giving them priority over existing liens, and therefore no notice to existing lien creditors was given or suggested.

The Prima case can be distinguished from this case in different particulars. There the court order expressly provided that the lien of the trustee certificates "shall be prior and superior to rights and interests of all parties to this suit and prior to any mortgage and bonds issued thereunder." Here the order did not say that the certificates were to have priority over existing liens. The order entered in this court on April 29, 1949, stated:

"It is further ordered that said certificates and each of them shall constitute a lien upon all the assets of every nature and description of the estate of the Debtor, and also upon the proceeds and earnings of said assets, saving and excepting administration and operating expenses of the Trustees."

The two certificates issued by the trustees thereunder, one for $50,000, dated April 29, 1949, and the other for $100,000, dated July 20, 1949, issued pursuant to the order of April 29, 1949, each contains the following provision:

"This obligation is issued under and by virtue of an order of the District Court of the United States for the Northern District of West Virginia, entered on the 29th day of April, 1949, and is part of the loan thereby and therein authorized to be incurred by us as Trustees of Mannington Pottery Company, Debtor, in the above entitled corporate reorganization proceedings, amounting in all to the sum of One Hundred Fifty Thousand Dollars ($150,000.00). The said loan, or so much thereof as may be required to conduct the business of the Debtor, has been made a first lien upon all the assets of every nature and description of the estate of said Debtor, and also upon the proceeds and earnings of said assets, saving and excepting administration and operating expenses of Trustees, as specified in said order entered on the 29th day of April, 1949, as aforesaid."

The original money loaned to the company by petitioner prior to the reorganization proceeding was mostly for the purpose of installing two new kilns. The trustees were unable to get these kilns to work effectively. Heavy losses ensued, and more working capital was needed. Petitioner agreed to loan $25,000 more to the trustees.

On July 9, 1949, another order was entered by the court authorizing the additional $25,000 certificate and petitioner made the additional loan. That order provided:

"It is further ordered that said certificates and each of them shall constitute a first lien having parity with previous certificate issued pursuant to order of this Court, dated April 29th, 1949, upon all the assets of every nature and description of the estate of said debtor, and also upon the proceeds and earnings of said assets, saving and excepting administration and operating expenses of the Trustees."

The trustee certificate dated July 9, 1949, for $25,000, issued pursuant to order of same date, provided:

"the said loan, or so much thereof as may be required to conduct the business of the Debtor, has been made a first lien upon the assets of every nature and description of the estate of said Debtor, and also upon the proceeds and earnings of said assets, saving and excepting administration and operating expenses of Trustees, as specified in said order entered on the 9th day of July, 1949, as aforesaid."

It can be seen that the order of April 29, 1949, under which $150,000 of the $175,000 bonds were issued did not provide that the certificates issued thereunder shall be a "first lien", but only a "lien". The insertion of the word "first" in front of the word "lien" in the two certificates

($50,000 dated April 29, 1949, and $100,000 dated July 20, 1949) issued pursuant to that order did not give the certificates any greater priority than that authorized in the order itself. The provision in the order of July 9, 1949, to the effect that the $25,000 certificate "shall constitute a first lien having parity with previous certificates issued pursuant to order of this court, dated April 29th, 1949", cannot and did not raise the priority of other certificates to that of the $25,000 certificate, but on the contrary, the $25,000 certificate was to be accorded the same priority as the $50,000 and $100,000 certificates. It is significant that neither order says anything about making the certificates prior to valid subsisting secured obligations or existing liens as was done in the order in the Prima case. None of the certificates contained such provisions.

It was not the intention of the court in entering either order to give priority to these certificates ahead of valid subsisting liens. This was explained to the trustees, counsel for the trustees, representatives of petitioner and counsel for petitioner when the first order was signed in my office on April 29, 1949. While the conversation was not reported, the question of priority over existing liens was discussed. Counsel for petitioner asked to have the words "first lien" inserted, but the court then stated that the insertion of these words would not have the effect of giving the certificates priority over existing liens. Thereupon a representative of petitioner called one of his superiors by telephone from the judge's office to report this conversation, after which the order was signed, and the RFC check was delivered. The orders were signed without giving the existing lien creditors any notice whatsoever. Had the court intended to supplant existing liens in this manner no order would have been entered without notice to existing creditors, and the order would have stated that the certificates were given priority ahead of valid subsisting liens as was done in the Prima case.

In Coursey v. International Harvester Co., 10 Cir., 109 F.2d 774, 777, the court said:

"The order entered on December 20, 1937, without any notice to the secured creditors, authorized the receiver to borrow not to exceed $5,000 and to issue receiver's certificates therefor which should constitute a first lien upon all the assets not exempt by law of the debtors was later by the court interpreted as follows: 'It was not the intention of the court in granting such order to make such certificates prior to valid, subsisting liens on any part of the debtors property existing at the time of the granting of the order.' "

One lending money to a corporate debtor in corporate reorganization proceeding acts at his peril in accepting receiver's certificates for amounts loaned and must examine and satisfy himself of sufficiency of debtor's or receiver's authority to borrow money. Standard Capital Corporation v. Saper, 2 Cir., 115 F.2d 383.

Old Sec. 77B, sub. c(3) of the Bankruptcy Act did not provide for notice to creditors when trustees' certificates were issued, but Chapter X, Sec. 116(2) provides that trustee certificates may be issued and given priority over existing debts "upon such notice as the judge may prescribe and upon cause shown".

Although the Prima case arose under the old Act, the mortgagee had an opportunity to appear and did appear before the court to resist the motion for authority to issue trustee certificates. Here the existing lien creditors had no notice of the motion of the trustees for authority to issue certificates. In Investment Bldg., Inc., v. Finance Company of America, 3 Cir., 105 F.2d 345, 347, Judge Biggs said:

"The provisions of Section 77B do not contemplate the striking down of the rights of creditors without notice. Notice is a very essential feature of the Bankruptcy Act if the rights of creditors are to be limited or curtailed."

It has been held that the notice provisions of the subsection of the Bankruptcy Act dealing with proceedings after approval of petition for corporate reorganization, with exception of provisions dealing

with preparation of lists of all known bondholders and creditors of, or claimants against, the debtor or its property, are mandatory and not permissive. Bankruptcy Act, Section 77B, sub. c, 11 U.S.C.A. § 207, sub. c. Herbert V. Apartments Corporation v. Mortgage Guarantee Co., 3 Cir., 98 F.2d 662.

 Counsel call attention to Collier on Bankruptcy, Vol. 7, pages 708–719, Forms Nos. 2312–2315, and the editor's "Notes and Suggestions" thereto. They point out that these forms were drafted in the light of the Prima case, and notwithstanding the fact that Sec. 77B did not expressly provide for notice, yet these forms clearly provide for notice to creditors upon the trustees' petition for authority to issue certificates. Since Sec. 116(2) of the Chandler Act expressly provides for notice, the conclusion is inescapable that notice to existing lien creditors is a mandatory prerequisite to the entry of an order authorizing the issuance of certificates having priority over such valid subsisting liens. The type of notice is to be prescribed by the court.

Petitioner cites the case of Amick v. Hotz, 8 Cir., 101 F.2d 311 as authority for the proposition that notice to creditors is not absolutely necessary in the instant case. The case cited is not in point because it involved a receivership prior to bankruptcy and all persons interested had been made parties to the suit and had constructive notice of the order authorizing the receiver to borrow money. The order was entered in 1934 and was not entered in a proceeding under either Sec. 77B of the old Act or Chapter X of the new Act.

It is urged by petitioner that the notice sent to creditors by the trustees on April 27, 1949, constituted notice that trustee certificates were to be issued with priority superior to existing liens. There is no merit in that contention. Trustees' certificates are not even mentioned in that notice. It simply told the creditors that the plant had closed down and that the trustees were trying to borrow working capital.

It is urged that the order entered on November 17, 1949, (the day on which the debtor was adjudicated a bankrupt) made the trustee certificates prior to all other existing liens. A reading of that order clearly refutes this argument. On that date the trustees had a balance of $104,858.42 in their hands. Of this amount $100,000 was the money obtained from petitioner from the second trustee certificate in that amount, and the remainder was the balance left from the third trustee certificate of $25,000. The administration and operating expenses were paid and petitioner was decreed to have priority upon the balance of the RFC money remaining in the trustees' hands amounting to $55,000, which was RFC money repaid to RFC. It was also decreed to have a lien prior to all other liens upon accounts receivable arising from merchandise sold by such trustees amounting to $17,119.22. The order does not give or even suggest that petitioner has priority ahead of other existing and recorded liens on other property such as real estate, and most of the existing liens which petitioner seeks to subordinate are recorded mechanic's liens on real estate. There is no doubt as to the power of the court to subject pledged property as well as mortgaged property to the lien of trustees' certificates; but nothing was done in this case, and the orders contain no provision which would supplant the valid subsisting liens to the trustee certificates. Some of the lien creditors, American Business Credit Corporation and New York Terminal Warehouse, seemed to rely on the security of the pledged property alone, and did not seem interested in the operation of the plant, as indicated by their refusal to turn over the pledged property to the trustees. In fact, the loan to operate the plant, did not enhance their security.

There is likewise no merit in petitioner's contention that the existing lien creditors have waived their right to notice, or waived their liens. On the contrary there is evidence that petitioner has not always claimed that their certificates had priority over all other existing liens. For example, on March 25, 1950, it filed a petition with the referee asking that the $413,000 realized

from the sale of the real estate be distributed as follows:

Real estate taxes $2,508.97; Harrop Chattle lien $14,854.50; RFC deed of trust lien $239,773.59; New York Terminal Warehouse Co. warehouseman's first lien $2,734.95; American Business Credit warehouseman's second lien $27,740.96; Lien of accounts receivable $23,402.54; and that the balance of $101,984.49 be applied on the trustees' certificates held by it, leaving unpaid on the certificates the sum of $20,-736.06 which it claimed as a lien on all remaining assets of the bankrupt remaining unsold. Pursuant to that petition the referee on April 3, 1950, ordered the payment of the real estate tax lien, the Harrop lien and the New York Terminal Warehouse lien out of funds in the hands of the trustee. No objections were taken to that order by anyone. The referee allowed priority to the certificates after the payment of valid subsisting liens mentioned above just as provided in the RFC petition. In its petition for review it says that all existing liens are subordinate to the certificates. Upon argument of the review it does not object to priority being given the Harrop lien ahead of the certificates but says that the certificates are ahead of all other existing liens, including the New York Terminal Warehouse lien, exactly opposite from the position it took on March 25, 1950.

There is another reason why the certificates cannot now be given priority over these existing liens. Petitioner filed its proof of claim claiming priority over all other existing liens on December 9, 1949. Other creditors objected, hearings were had thereon, and briefs filed on the question, after which the referee, on March 9, 1950, entered an order fixing the priority of all liens. The claim of petitioner for priority over all other existing liens was denied, but it was given a lien first in priority after existing liens. Petitioner objected to the order but filed no petition for review within ten days.

Sec. 39, subsection c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, provides that:

"A person aggrieved by an order of a referee may, within ten days after the entry thereof, or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge * * *."

It became the purchaser of the property on March 10, 1950, and urged a prompt confirmation of sale. Instead of filing a petition for a review within ten days after March 9, it filed on March 25 its petition described above asking that the money in the trustees' hands from the sale of real estate be disbursed as described above, which did not give the certificates priority over all existing liens.

Nothing more was done with reference to the certificates until December 15, 1950, when petitioner filed an amended petition in which it again admits priority of the liens mentioned in its petition of March 25, 1950, but then asserts that the referee has committed error in his order of March 9, 1950, wherein he fixed priority of liens and "disallowed" priority to the certificates over all other existing liens; and asks that the referee reconsider. On May 16, 1950, the referee entered his final order in which he finds that this amended petition does not seek new or different relief, does not point out any new evidence, and therefore the several prayers of the amended petition are denied. In other words the referee held that there was no new matter which would justify reconsideration of his former order. Whether or not a petition for reconsideration will be granted is in the sound discretion of the referee, and a review cannot be taken from a denial thereof. Collier on Bankruptcy, 14th Ed., Vol. 3, Sec. 57.23, page 313. To this order petitioner objected and within ten days filed its petition for review.

Under these circumstances, the order fixing priorities entered on March 9, 1950, became final insofar as the priority of these certificates were concerned when no petition for review was filed within the time permitted to appeal. It was an entirely different situation than that presented with reference to the Internal Revenue tax

lien. In disallowing the priority of the certificates over existing liens the referee considered the lien claim on its merits after full hearing, and the filing of briefs, and entered an order deciding that point on its merits. That was not done with reference to the Internal Revenue lien. Through mistake and inadvertence, the referee did not realize that a valid lien was on record, or that it was claimed. He did not decide the matter on the merits. He did not disallow the lien claim because he had never considered it. It was his duty, the same as it would have been the duty of any district judge, to correct such mistake. With reference to the certificates there was a full hearing on the merits and the proper remedy was to petition for review. A reconsideration of a claim merely for the purpose of reaffirming the previous order without a hearing on the merits, so as to extend or revive a right of appeal which would otherwise be lost by lapse of time is without jurisdiction and void, although the mere fact that time for appeal has expired does not prevent a reexamination where good cause otherwise exists. 8 C.J.S., Bankruptcy § 446. For the referee to grant application to retry an order in bankruptcy merely because one party was dissatisfied with result would be an abuse of discretion. McLeod v. Boone, 9 Cir., 91 F.2d 71, 74. The prevailing view seems to be that while a referee may reconsider allowed claims at any time before the estate is closed, a creditor is not entitled to such reconsideration if his claim has been disallowed in whole or in part, or if his asserted priority is denied. In that case the aggrieved creditor must petition for review within the ten days allowed for review. Collier on Bankruptcy, Vol. 2, Sec. 39.17, page 1476.

The action of the referee with reference to the priority of the trustee certificates is affirmed.

### Method of Allocating Proceeds of Sale and Costs.

The trustee in the bankruptcy proceeding was authorized and directed to offer the real and personal property of the bankrupt as a whole and in separate parts. There were different liens on the real estate and personal property held by various creditors. It was the desire of the referee not only to secure the best possible price for the property, but to secure some evidence of the value of the respective parcels for the purpose of allocating the proceeds of sale. Accordingly, the trustee carefully prepared a written schedule in twelve parts in which the parcels were offered for sale separately, as a whole and in various combinations. There was a conditional bid by petitioner for the plant and equipment as a whole for $413,000, the condition being that not more than $253,000 of the purchase price be allocated to real estate. The trustee properly rejected this bid as being in conflict with the order of sale, which did not give him authority to sell the property upon any such condition. Thereupon petitioner made an unconditional bid in the same amount and became the purchaser of the plant and equipment as a whole. No other bids were received upon the twelve separate offerings, except two lien creditors did offer bids upon parts of property upon which they had liens. There being no bids at all upon other real and personal property when offered separately, the plant was sold as a whole to petitioner. The referee held that "the bidding at the trustee's sale was not sufficient to be used as a basis for determining the relative values of the several classes of property" for allocating distribution of proceeds of sale and relative costs to be charged against the various classes of property; and that the appraisement of the various parcels of real and personal property of the bankrupt did offer an equitable basis for such allocation, and made allocation on that basis. In reaching this conclusion the referee gave consideration to the "entire record" in the case. Petitioner contends that allocation should have been made on the basis of its conditional and rejected bid, which would allocate not more than $253,000 of the total purchase price to real estate, instead of the $273,000 allocated to real estate by the referee when using the appraisement as the basis of allocation. This contention of petitioner is wholly without merit.

There can be no doubt that in a bankruptcy proceeding that a lien on less than all of several parcels of property sold in one lot may be transferred to the gross proceeds only to the extent as the particular property covered by the lien contributed to the whole fund. In re Wesley Corporation, D.C.E.D.Ky., 18 F.Supp. 347, 350; In re Bowen, D.C.E.D.Pa., 35 F.Supp. 60; In re Hetzel, D.C.M.D.Pa., 23 F.Supp. 530; In re Benz, 3 Cir., 218 F. 50; First Savings & Banking Co. v. Kilmer, 4 Cir., 263 F. 497; Leslie v. Knight Soda Fountain Co., 2 Cir., 55 F.2d 224. The proportion contributed to the whole fund by a particular property must be ascertained by the referee from competent evidence. In re Wesley Corporation, supra; Leslie v. Knight Soda Fountain Co., supra. The appraisement of the bankrupt's estate is competent and sufficient evidence on which the referee may base the apportionment of the sale price among claimants. In re Wesley Corporation, supra; In re Hetzel, supra; Frederick v. Meyran, 3 Cir., 278 F. 503; In re Beardsley, D.C.Md., 38 F.Supp. 799, Remington on Bankruptcy, Vol. 6, page 97, Sec. 2602, and page 31, 1951 Supplement.

The only evidence in the record showing what each parcel contributed to the entire sale price is the appraisement. The appraisement was made by competent and disinterested persons at a time when their opinions could not have been biased in favor of or against any particular creditor.

Petitioner takes the position that the record contains evidence of a bid of $253,-000 for the real estate, and that the referee should consider that amount as the value of the real estate. This argument is not based on fact. There was no such bid for the real estate. Petitioner bid $413,000 for all the property upon the condition that $253,000 of the bid be allocated to realty. This was not a bid but a tender of a bid upon condition not authorized in the order of sale. When the tender was refused petitioner made an unconditional bid in the same amount, urged immediate confirmation, and the sale was confirmed.

The record shows that the figure of $253,-000 was not arrived at by petitioner on the basis of value of the real estate, but was simply the figure necessary to discharge prior liens and to protect its lien on the real estate without regard to value. When it was discovered that there was an additional prior tax lien not taken into account in its figure of $253,000, it sought to amend its conditional bid by increasing that figure to approximately $257,000, to take care of the additional tax lien. It wanted that amount arbitrarily allocated to real estate simply because such an allocation would best suit its purposes, and wholly without regard to value of the real estate. It had large prior liens on inventory and supplies, and the greater the amount allocated to these items and the less that was allocated to plant and equipment, the better its position.

It now contends that the conditional bid should have been accepted. To accept this view would be to allow a purchaser at a judicial sale to select the creditors among whom the purchase price should be allocated to the preference of some creditors and the exclusion of others without regard to either the value of the respective parcels or the legal priority of liens. If separate bids had been made for each of the items as listed by the trustee, the amount of bids would not have been controlling but only one item of evidence to be considered by the referee in determining values and the proper method of allocation. In re Wesley Corporation, supra. Under all the evidence in the record the referee committed no error in using the appraisement as the basis of such allocation.

For the reasons stated above, there is no merit in any of the points raised by the RFC on this review. The order of the referee is affirmed.