In the Matter of **PUBLIC LEASING CORPORATION, Debtor.**

**No. BK–72–286.**

United States District Court,
W. D. Oklahoma.
June 16, 1972.

---

1. See discussion in Comment, Welfare for Strikers: ITT v. Minter, 39 U.Chi.L.Rev. 79, 80 at n. 10 (1971).

Norman E. Reynolds, Oklahoma City, Okl., for White Motor Co.

Clarence Black and William B. Rogers, Oklahoma City, Okl., for International Harvester Credit Corp.

Monty L. Bratcher, Oklahoma City, Okl., for First National Bank of Fort Worth and Fruehauf Corp.

Bruce McClelland, Oklahoma City, Okl., for American Trailers and General Motors Acceptance Corp.

Don R. Nicholson II, Oklahoma City, Okl., for Community National Bank of Warr Acres and Fidelity Bank, N.A.

James M. Renegar, Oklahoma City, Okl., for VePed Traffic Controls.

Ronald L. Howland, Oklahoma City, Okl., for Kenworth Trucks.

Lin Patterson, Oklahoma City, Okl., for Faye Foy and Dale W. Cole.

James P. Linn, pro se.

Roland A. Walters, Jr., Oklahoma City, Okl., for Penn Square National Bank.

Hal D. Leaming, Oklahoma City, Okl., for Henry James, Trustee of the Debtor Corporation.

## MEMORANDUM OPINION

BOHANON, Chief Judge.

This cause came on for consideration by the Court upon objections of certain secured creditors to an Order authorizing issuance of a Trustee's Certificate of Indebtedness in the sum of $150,000.-00.

A summary of the facts as found by the Court should be set forth. On March 2, 1972, Public Leasing Corporation, debtor, filed a verified Petition for Reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., alleging it was unable to pay its debts as they matured and, among other things, alleging that it could be reorganized under Chapter X proceedings so as to satisfy all creditors, both secured and unsecured, and to preserve stockholders' investments. On the same day representations were made to the Court that an emergency existed, which representations the Court found to be reliable, and the Court appointed Henry James, Trustee of the debtor estate, with broad powers to operate the business and manage the property of the debtor, and with the specific authority to pay all taxes and lawful charges incurred in the operation of the business and for the preservation of the assets of the debtor estate. The Order provided for the normal operating reports, investigative procedures as to claims, liabilities and the general condition of the debtor.

In the Order appointing the Trustee, the Court provided, without notice: "In view of the immediate need of approximately $150,000.00 with which to purchase vehicle tags, insurance and other emergent items, * * *" and authorized the Trustee to borrow from Robert P. Lammerts and Mid-Continent

Life Insurance Company $75,000.00 from each upon Trustee's Certificate of Indebtedness.

On the date of the appointment of the Trustee and the authorization to issue the Trustee's Certificate of Indebtedness, the Court was convinced upon the representations made that the numerous items of truck-trailer road rolling equipment of the debtor estate were generally in a poor state of repair, were dispersed throughout the southern half of the United States, and the whereabouts of many unknown. Unless insurance premiums on equipment operated by debtor were paid and license plates were purchased and pro rata license fees were paid to various states instanter, said equipment could not operate and penalties would be incurred with great loss of revenues, all to the detriment of the creditors, secured and unsecured, and the stockholders of the corporation. Based upon said representations, the Court authorized the issuance of said Trustee's Certificate without notice, due to the emergency situation, authorizing the use of the Trust Certificate funds for the purpose of taking care of these emergency and necessary operating expense items. The motor vehicles and equipment could not be operated upon the highways of the United States without the payment of the license fees to purchase the license tags and to purchase pro rata licenses in other states, nor could said vehicles be lawfully operated upon the highways without the procurement of adequate insurance to protect the public and to comply with State laws; that to fail to pay these items would cause a cessation of the operation of the debtor corporation and would preclude the possibility of reorganization. At the time the Trustee's Certificate of Indebtedness was authorized, and at this time, the Court was and is of the opinion and finds that the borrowing of the funds for the purposes above indicated was for the best interests of all concerned; creditors, secured and unsecured, and the stockholders, and that no detriment could be suffered by any par-

ties because of the issuance of said certificate and the use of the funds for the purposes above stated.

Secured mortgage creditors filed Petitions for Reclamation, and the Court heard evidence from the Trustee and all other parties who desired to submit evidence. The hearings on these Petitions for Reclamation, after notice to all creditors, were conducted on March 14, April 10 and May 15, 1972, and with reference to the Trustee's operation and recommendations, the Court entered Findings of Fact at the conclusion of said hearings and found and concluded that there was a strong possibility that the debtor estate could be successfully reorganized thereby paying the creditors, secured and unsecured, and preserving equity for the stockholders; the Court further found at the last mentioned hearings that the evidence established that prior to the appointment of the Trustee on March 2, 1972, the items of equipment purchased from the secured creditors above mentioned were generally in a poor state of repair and were dispersed throughout the southern half of the United States; the Court further found that the work and services of the Trustee to the debtor corporation have more than offset the actual depreciation of the equipment as asserted or claimed by the secured creditors or the amount expended from the funds received from the Trustee's Certificate of Indebtedness.

Considering the representations and statements made to the Court on March 2, 1972, when the Trustee was appointed, and when the Certificate of Indebtedness was authorized, and upon the findings made by the Court upon the respective Petitions for Reclamation as hereinabove partially enumerated, the Trustee's Certificate of Indebtedness was properly authorized and was in the best interest of all concerned and with prejudice to none.

The funds received from the Trustee's Certificate were used as the Court's Order required and for legal and proper operating expenses and costs, all as shown by the following tabulation,

which is a part of the record in this case, to-wit:

"PUBLIC LEASING CORPORATION
Report on Payment Applicable
To The $150,000.00 Trustee
Certificate of Indebtedness
Through April 30, 1972

| | In Proceedings For The Reorganization Of A Corporation |
|---|---|
| In The Matter of Public Leasing Corporation | BK–72–286 |

| Tags and Prorates: | |
|---|---|
| International | $ 54,777.16 |
| White | 35,605.30 |
| Fruehauf | 451.72 |
| Hobbs | 1,690.42 |
| American | 625.54 |
| GMAC | 659.15 |
| Kenworth | 4,384.76 |
| Peterbilt | 735.55 |
| Strick | 1,005.85 |
| Ford | 2,253.60 |
| Other | 1,474.92 |
| | $103,663.97 |
| Trustee Bond: | $ 500.00 |
| Insurance for all Trucks, Trailers & Cars | 47,669.00 |
| Federal Highway Use Tax | 12,955.50 |
| February Telephone & Utilities | 5,972.54 |
| | $170,761.01" |

It is abundantly clear, as shown by the itemization of the use of the funds received from the sale of the Trustee's Certificate of Indebtedness, that more than $150,000.00, the amount of the certificate, was actually used to purchase license tags and insurance for trucks, trailers and cars of the objecting secured creditors, thus relieving them of most, if not all, of said expense had they been successful in reclaiming their equipment. They have thus benefitted greatly.

In addition to their contention that the Trustee's Certificate of Indebtedness was not properly or legally issued, they also contend and challenge the good faith of the petitioning debtor for reorganization under Chapter X proceedings.

With reference to the good faith question, attention is called to the case of A–COS Leasing Corporation, et al. v. R. F. Wheless, Jr., receiver (5 C.A. 1970) 422 F.2d 522, where the Court at pp. 524–525 said:

" 'Good faith' is not defined in Chapter X. However, Sec. 146 of the Bankruptcy Act states that a petition is not filed in good faith—

(2) if adequate relief can be obtained under Chapter XI.

If the proceeding is to affect only the rights of unsecured creditors, it should be in Chapter XI. It is only when the capital structure or the rights of secured creditors or stock interests are to be affected that resort should be had to Chapter X. Also, 'good faith' is not present if it is unreasonable to expect that a plan of reorganization can be effected. The whole scheme of Chapter X indicates that this test should not bar approval of a petition unless it is abundantly clear that there is no possibility that a plan of reorganization can be effected. In other words, the Court should be 'reorganization minded' and not 'liquidation minded.' Any doubt as to whether a plan can be effected should be resolved in favor of the approval of the petition, as some corporations whose affairs have seemed hopeless at the outset have undergone successful reorganization. In other words, the provisions of Chapter X should be given a sympathetic construction consonant with the relief intended. 'Procedural Aspects of Capter X,' Honorable Clive W. Bare, Referee in Bankruptcy, Eastern District of Tennessee; Vol. IV, Proceedings of Fourth Seminar for Referees in Bankruptcy.

While this Court is of the opinion that corporate debtors should be given a great deal of leeway in the utilization of the relief provided by Chapter X; nevertheless, when the Court's own appointed disinterested trustee has investigated the debtor's business, his prospects for successful reorganization, and has recommended to the appointing judge that Chapter X would not be the proper vehicle under which to travel; and the district judge, based on these recommenda-

tions, concurs; then it is our view that an appellate tribunal should use extreme caution in reversing the District Court."

See also In Re Delta Food Processing Corporation, 313 F.Supp. 788 (U.S.D.C., N.D.Miss.).

■ Under the circumstances existing at the time of the appointment of the Trustee and the issuance and authorization of the Certificate of Indebtedness, it was imperative that the Court either authorize the Trustee's Certificate or declare the petitioner bankrupt and order liquidation and thus destroy the whole possibility of successful reorganization.

Section 116 of Chapter X provides that:

"Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties in this chapter conferred and imposed upon him and the court—

(2) authorize ＊ ＊ ＊ trustee ＊ ＊ ＊ upon such notice as the judge may prescribe and upon cause shown, to issue certificates of indebtedness for cash, property, or other consideration approved by the judge, upon such terms and conditions and with such security and priority in payment over existing obligations, secured or unsecured, as in the particular case may be equitable."

Section 116(2) does not foreclose other means for Trustee to borrow money or incur indebtedness. Avorn Dress Co., Inc. (2 C.A., 1935) 79 F.2d 337. The power to authorize the continuance of the debtor's business also implies the power to permit the borrowing of money or the incurring of indebtedness. Amick v. Hotz (8 C.A., 1939), 101 F.2d 311, cert. den., 307 U.S. 637, 59 S.Ct. 1033, 83 L.Ed. 1518; In Re Erie Lumber Company, (S.D.Ga., 1906) 150 F. 817.

In the *Erie* case, supra, the Court at page 828 appropriately stated:

"The power to continue business implies the power to make debts, and to provide for their payment, which must include the power to borrow money for urgent necessities and for direct operating expenditures. These considerations, we think, are conclusive as to the validity of the receivers' certificates, nor has any other lienholder the right to complain of their priority."

In Collier on Bankruptcy (14th Ed.) Vol. 6A at page 47 the author states:

"In the conduct of the debtor's business, the trustee or debtor continued in possession has much the same status of an operator as the debtor had prior to reorganization. Thus taxes accruing on the property and by virtue of doing business must be paid, and the requirements of applicable state and federal laws must be complied with."

and cites many cases.

An interesting case, discussing allegedly unauthorized loans to Trustee in bankruptcy is Wolf v. Nazareth Fairgrounds and Farmers' Market, Inc. (2 C.A., 1960), 280 F.2d 891, wherein the Court at page 892 said:

"[1, 2] This court has held that under former Section 77B of the Bankruptcy Act an unauthorized loan may receive priority as an expense of administration in such unusual circumstances as would justify equitable relief. In re American Cooler Co., 2 Cir., 1942, 125 F.2d 496, 497. The parties here do not dispute that this principle is equally applicable to Chapter X proceedings. See also 6 Collier, Bankruptcy, § 3.26 (14th Ed.). In the present case it is not disputed that the proceeds of the Carty loan were used solely for purposes previously approved by the court, nor is it disputed that this use of the proceeds was instrumental in enabling Nazareth to continue as a going concern. Finally, it appears to be uncontradicted that Nazareth's creditors have been benefited by this continuation. Thus we conclude that this case presents those elements which we indicated in American Cooler, supra, would be necessary

to sustain an order retroactively approving an unauthorized loan."

The objecting parties here relied heavily upon the case of In Re Mannington Pottery Company (U.S.D.C., N.D.W.Va., 1952), 104 F.Supp. 506. A reading of this case will clearly reveal that there was in *Mannington* a fact situation quite dissimilar to the case under consideration and does not touch the problems that confronted the Court in this case when the Trustee's Certificate was authorized, issued and sold.

The Court is of the opinion that the Trustee's Certificate issued in this case was properly issued for proper purposes and is valid in all respects. If, however, the Certificate was prematurely authorized, under the circumstances existing, then the Court now retroactively reaffirms the authority to issue and the issuance of said Trustee's Certificate.

An appropriate Judgment will be entered and filed simultaneously with the filing of this Memorandum Opinion.