## In re YELLOW TRANSIT FREIGHT LINES, Inc.

### BRAND v. YELLOW TRANSIT FREIGHT LINES, Inc.

#### No. 10886.

United States Court of Appeals
Seventh Circuit.

Nov. 4, 1953.

Max G. Morgan, Oklahoma City, Okl., Walter Myers, Jr., Indianapolis, Ind., for appellant.

Kenneth E. Midgley, Kansas City, Mo., Kirkwood Yockey, Harry E. Yockey, Indianapolis, Ind., A. E. Robert Friedman, New York City, Yockey & Yockey, Indianapolis, Ind., Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

On February 29, 1952, the appellee, Yellow Transit Freight Lines, Inc., filed in the District Court for the Southern District of Indiana, Indianapolis Division, its voluntary petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. By order of court, the debtor, hereinafter referred to as Yellow, was continued in the possession of its property and assets.

On April 29, 1952, Yellow's board of directors approved the execution of a contract with one George E. Powell of Kansas City, Missouri, under the terms of which and upon compliance with certain conditions precedent, said Powell agreed to advance $750,000 for the purpose of enabling appellee to propose an arrangement with its unsecured creditors contemplating payment in full of all debts allowed. The Referee in Bankruptcy on May 1, 1952, approved the execution of this contract by Yellow.

On May 5, 1952, the appellant C. Harold Brand, filed his proof of claim alleging that Yellow was liable to him on an oral brokerage contract made with claimant on or about February 19, 1952, for 5% of any funds or assets secured from Powell and associates, to become due when Powell or associates advanced any funds or assets under the contract of April 29, 1952. Thereafter, appellant took the depositions of himself and his associates, John A. Moore and Horton Jacques, and of Theodore E. Dean and A. W. Gilliland, agents of appellee, and of George E. Powell. The depositions were filed on May 31, 1952.

On June 23, 1952, the appellee, debtor in possession, filed its answer and its motion for summary judgment, based on the claim and on the depositions. Plaintiff on the hearing filed an affidavit in opposition to the motion.

The motion for summary judgment was sustained and the claim denied by the Referee on July 15, 1952. The appellant petitioned the District Court for review. On hearing, the District Judge sustained the Referee's orders.

Appellant insists here that the facts set forth in his verified claim and in the depositions filed and affidavits submitted sustained his claim for services rendered in procuring new capital for the debtor corporation. He also urges that the claim, depositions and affidavits presented genuine issues as to material facts and that summary judgment was improperly entered.

As we have pointed out, appellant in his proof of claim stated that liability to him was based upon an oral brokerage contract with appellee made on or about February 19, 1952, under the terms of which he was to receive 5% of new capital procured for appellee. Appellant was a real estate broker doing business in Oklahoma. He had on several occasions acted as broker in procuring persons to construct truck terminals for the use of Yellow, in various parts of the United States. Early in 1952, he with associates was negotiating for such terminals in the cities of Indianapolis, Indiana, San Antonio, Texas, and Tulsa, Oklahoma. About February 19, 1952, he went to Dallas, Texas for the purpose of presenting a commitment for the erection of such truck terminals. He found that Mr. McCarthy, the former general manager of the appellee, and Mr. Cobb, its superintendent of build-

ings, were no longer with the appellee company. He then contacted one Theodore Dean, who was a director of the company and its vice-president in charge of labor relations and sales. The meeting between appellant and Dean occurred at a country club in Dallas. The transactions for the erection of terminal facilities were postponed because the appellee company was in serious financial difficulties. Later, on the same day, appellant had a further conversation with Mr. Dean. He then offered to bring in an investor, or purchaser, with new capital for reorganization purposes. No definite authority was granted appellant at that time to do so, but he says before he departed from Dallas he had a further conversation with Dean, in which he mentioned the name of a truck line which might be interested. Mr. Dean said that prospect would be welcome but not to make any commitments at that time because of a deal pending with Navajo Freight Lines, Inc. Immediately after the last conversation mentioned, plaintiff phoned an associate, Mr. Jacques, and they both began contacting various prospective investors. Appellant in the brief filed herein on his behalf says:

"Plaintiff admits that at that particular time there was no direct authorization for him to proceed immediately. However, several days later, about February 22, 1952, at the airport, plaintiff saw Dean who was preparing to leave for the East. At that time Dean told him that prospects would be welcome, if the Navajo deal did not go through, but for plaintiff not to commit prospects at that time."

The Navajo deal was submitted to the creditors of appellee on or about March 26, 1952, and on that date or shortly thereafter, was declined by said creditors.

The Referee in his opinion pointed out:

"In an action by a broker against his alleged principal, the burden is on the broker of proving the fact of his employment by the principal, or by his duly authorized agent, or, in the case he was employed without authority, of proving the principal's subsequent ratification of the employment. It would, indeed, be stretching the imagination to conclude that Theodore R. Dean had the authority to enter into any dealings with petitioner in obtaining the necessary capital. Dean could not bind debtor corporation in this unusual contract under consideration. This power could only be given to Dean by the Board of Directors. There is nothing in the record to indicate that A. W. Gilliland had any dealings with petitioner prior to February 29, 1952, or that he was authorized to employ brokers to find capital for debtor corporation. Obviously, there was no contract, express or implied, between petitioner and debtor corporation on or before February 29, 1952."

■ When Yellow filed its petition under Chapter XI of the Bankruptcy Act on February 29, 1952, the exclusive jurisdiction of its property and of the debtor was vested in the court. Thereafter neither Dean nor any other officer of the corporation could enter into such an unusual contract without the authority of the District Court. In re Walker Grain Co., 5 Cir., 295 F. 120; Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020.

■ The use of summary judgment procedure provided for in Rules 56(b) and (c), Federal Rules of Civil Procedure, 28 U.S.C.A., has been approved in bankruptcy proceedings. Beall v. Pinckney, 5 Cir., 132 F.2d 924–925; Cohen v. Elever West 42nd St., Inc., 2 Cir., 115 F.2d 531, 532.

Appellant however insists that, in the case under review, there are what he calls "genuine issues of material fact" and that as a consequence it was error to enter summary judgment.

As stated by appellant, these "genuine issues of material fact" are as follows:

1st Did Theodore Dean have authority to contract for appellee in the matter involved?

2d Did claimant Brand and his associates first contact George Powell? and

3rd How was Mr. Yockey brought into the picture?

While the first alleged "issue of material fact" is the decisive factor in this case, we propose to consider each of said issues.

1st—This court In re Paoli Lithia Springs Hotel Co., 5 F.2d 902, 904, quoted with approval the following language from Wainwright v. P. H. & F. M. Roots Co., 176 Ind. 682, 97 N.E. 8:

"The office of president of a private corporation of itself confers no power on the incumbent to bind the corporation or control its property. His powers as agent must come by delegation from the corporation through the board of directors, formally and directly granted, or implied from its habit or custom of doing business."

There is no pretense in the case under consideration here that Dean was formally and directly granted authority to employ brokers to procure investors in the appellee company.

■ Moreover, Dean was merely vice-president "in charge of labor relations and sales." Procuring new capital is clearly not within the scope of authority presumed to exist in one charged with fostering labor relations or making sales. There is not a scintilla of evidence of prior dealings or of holding out that would justify Brand in assuming that Dean had authority to contract for the procurement of capital investments.

It does not appear from the record that Dean ever negotiated or signed on behalf of Yellow any contract having to do with the creation or leasing of terminal facilities in which appellant was interested.

Had prior dealings between claimant and Yellow been such as to justify the inference that Dean had implied authority to contract on Yellow's behalf for the procurement of capital investments in appellee company, appellant had ample opportunity to procure and put in the record proper evidence thereof. Rule 56(f), Federal Rules of Civil Procedure.

■■ 2–3. A broker has the burden of proving not only that he had a contract but also that his services thereunder and rendered pursuant thereto were the efficient and procuring cause of the sale or other transactions for which he claims commission. Conley v. Brummit, 92 Ind.App. 620, 176 N.E. 880. Powell testified that his first information about Yellow came from the vice-president of Fruehauf Truck Company, one of the larger creditors of appellee, early in February, 1952. Powell was told Yellow was in financial difficulty and that a change of management was indicated. He was asked if he would be interested and answered that he would take up and discuss the matter on his next trip to Detroit. He was in Detroit on April 4, 1952, and was told to see Mr. Yockey, the attorney for appellee. He returned by way of Indianapolis and did see Mr. Yockey. When he got back to Kansas City he called Moore, appellant's associate, on April 5, 1952, and told him of his conference with Yockey who claimed, he said, that no one had authority to negotiate for Yellow except himself. Powell gave the same information to Jacques, the second associate of appellant.

Thereafter the dealings of Mr. Powell were with the creditors, he had no other or further dealings with Mr. Yockey.

There is no evidence in the record that appellant or his associates ever furnished Powell with the information upon which the complicated and detailed provisions of the contract of April 29, 1952, is based. Such information came from others than appellant and his associates. What we have here said disposes of the question as to how Mr. Yockey got into the picture.

Appellant and his associates testified that at no time did they undertake to communicate with the court or inform

it of their alleged contract to procure investors, or of their activities thereunder. Certainly they must be held to know that the filing of the petition in Chapter XI proceedings vested in the court absolute and exclusive jurisdiction over the appellee and its assets. Price v. Louisiana, etc. Corp., 5 Cir., 134 F.2d 548.

The order of the District Court is Affirmed.