LOCAL JOINT EXECUTIVE BOARD, AFL–CIO, affiliated with the Hotel and Restaurant Employees and Bartenders International Union, Appellant,

v.

HOTEL CIRCLE, INC., also known as Monarch Advertising, aka Hotel Associates, aka Le Baron Hotels, Inc., et al., Appellees.

No. 74–2279–GT.

United States District Court, S. D. California.

June 11, 1976.

Richard D. Prochazka and Ralph M. Phillips, Domnitz, Prochazka & Mazirow, San Diego, Cal., for appellant.

Robert W. Bell, Jr., and William McCurine, Gray, Cary, Ames & Frye, San Diego, Cal., for Official Creditors' Committee.

Stephen R. Brown, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for Cabot, Cabot & Forbes Land Trust.

Harvey H. Hiber, Jr., San Diego, Cal., for Home Federal Savings & Loan Ass'n.

V. Frank Asaro, San Diego, Cal., for Hotel Circle, Inc.

Joel C. Estes, San Diego, Cal., for Harry Henke, III.

Richard A. Peterson, San Diego, Cal., for First National Bank.

Ralph M. Pray, III, San Diego, Cal., for Official Creditors' Committee.

Leon Savitch, Los Angeles, Cal., Official Creditors Committee, for Kenneth Riley.

Clifford L. Duke, Jr., San Diego, Cal., for Atlas Hotel.

Abigail Cooley, Asst. Gen. Counsel for Special Litigation, Washington, D.C.

James S. Scott, Regional Attorney Region 21, N.L.R.B., Los Angeles, Cal.

## OPINION

GORDON THOMPSON, Jr., District Judge.

On October 10, 1974, Hotel Circle, Inc., also known as Le Baron Hotels, Inc., a California corporation, filed for protection under Chapter XI of the Bankruptcy Act. After the filing of the Chapter XI petition, the business was operated by the debtor in possession. On July 21, 1975, a receiver was appointed to replace the debtor in possession and operate the business.

The Le Baron Hotel was a member of the Restaurant-Hotel Employers' Council, a multi-employer group formed to negotiate terms and conditions under which the employer members of the council would hire members of the Local Joint Executive Board AFL–CIO (the union). The receiver's representative participated in discussions of the Employers' Council relating to the negotiations between the council and the union. At a council meeting on August 18, 1975, the representative of the receiver voted to accept a proposed wage increase and extend the life of the existing collective bargaining agreement.

Thereafter, the receiver paid the hotel employees covered by the agreement in accordance with the renegotiated contract. The receiver did not indicate to the union that he considered himself bound by the agreement.

During the course of the Chapter XI proceedings, Atlas Hotels, Inc. offered to purchase the Le Baron Hotel, provided the purchase was clear of any existing collective bargaining agreements. An express condition of the sale was that none of the debtor's collective bargaining agreements be transferred to the purchaser, Atlas Hotels.

In December of 1975, the receiver proposed to sell the Le Baron property, subject to the approval of the bankruptcy court. On December 12, 1975, the Official Creditors' Committee filed a motion seeking to reject various executory contracts, including a contract between the San Diego Hotel and Restaurant Employers and Bartenders Union of San Diego, Local 30 and the Restaurant-Hotel Employers' Council of San Diego. On December 15, 1975, at the conclusion of a hearing on the motion, the bankruptcy judge stated:

If I'm correct, the bankruptcy court has the power, under section 313(1) to authorize the rejection of an executory contract, then whether the receiver is bound by the contract or not, it would be a—indeed, a hollow right to be able to reject that contract, if the receiver then had to wait until 60 days prior to the expiration of the contract to give notice of its termination and modification [in accordance with the National Labor Relations Act].

I think that hand in hand with the power to reject an executory contract goes, too, power to reject it in all its phases and not just some contracts and not others. I don't believe in a bankruptcy situation, the notice requirement of section 8 of the National Labor Relations Act is applicable in matters of rejection.

On this date, December 15, 1975, the bankruptcy court issued an order authorizing the sale of the Le Baron Hotel to Atlas Hotels. The amended order authorizing the sale and prescribing its terms was issued on December 16, 1975.

The sale was consummated on December 29, 1975, and escrow closed in accordance with the terms of the order of the bankruptcy court. On January 6, 1976, the bankruptcy court issued its order rejecting the purported collective bargaining agree-

ments of the Local Joint Executive Board (union).

### I. *Appeal Number One*

 In appeal number 1, the union seeks to review the amended order of December 16, 1975, authorizing and confirming the sale of the Le Baron property to Atlas Hotels. In appeal number 2, the union seeks to review the January 6, 1976 order, granting permission to the receiver to reject the collective bargaining agreement between the receiver and the Local Joint Executive Board.

The appellees move to dismiss the appeal from the amended order of December 16, 1975. They contend that the matter is moot and appeal number 1 should be dismissed. No attempt was made by the appellants to stay the execution of the amended order of the bankruptcy court, and on December 29, 1975, the Le Baron Hotel was conveyed to Atlas Hotels. The appellees maintain that in order for the union to contest the bankruptcy order authorizing the sale, the union should have moved for a stay of the order under the provisions of rule 805 of the Rules of Bankruptcy Procedure. Rule 805 provides:

A motion for a stay of the judgment or order of a referee, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance to the referee. . . .
[T]he referee may suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal upon such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by the referee, may be made to the district court, but the motion shall show why the relief, modification, or termination was not obtained from the referee.

The appellee also relies upon rule 11–62(2) of the Rules of Bankruptcy Procedure for further support; it provides:

(2) The following shall be added to Rule 805 thereof:

Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal whether or not the purchaser or holder knows of the pendency of the appeal.

Under the provisions of rule 11–62(2), the sale to a "good faith" purchaser will not be disturbed by a modification, on appeal, of an order approving the sale of property. Absent a stay of the order approving the sale, the sale to a good faith purchaser will not be affected. However, the rule does not shield a purchaser who has not proceeded in good faith. Mere knowledge of the pendency of an appeal does not deprive the purchaser of the protection of rule 11–62(2), but knowledge may be relevant in determining the purchaser's good faith status.

Rule 11–62(2) itself envisions the "reversal or modification" of a bankruptcy order approving the sale of property where a stay pending appeal did not issue. The rule does not preclude the district court from reviewing the amended bankruptcy court order and granting relief. Nevertheless, the appellees urge that the court need not reach the merits of this appeal because the sale of the Le Baron has rendered the appeal moot.

Since the date of the amended order authorizing the sale, December 16, 1975, the sale of the Le Baron has been consummated. Where circumstances so change during the pendency of an appeal that no effectual relief can be granted, the court will dismiss the appeal as moot. *Sobel v. Whittier Corp. et al.,* 195 F.2d 361 (6th Cir. 1952).

However, consummation of the sale of the Le Baron Hotel is not conclusive. As the court stated in *Ramsburg v. American Investment Company of Illinois,* 231 F.2d 333, 336 (7th Cir. 1956):

[E]ven where the subject matter [of the suit] has been so completely destroyed as to preclude restoration of the status quo, the court still has jurisdiction to grant

incidental relief and the cause is not moot.

After reviewing the provisions of the bankruptcy court's amended order, it appears that this court is incapable of fashioning any relief, incidental or otherwise, that would affect substantial·interests of the parties.

It should be noted that Atlas Hotels, the purchaser of the Le Baron Hotel, is not a party to this proceeding and is not within the court's jurisdiction. *See Fink v. Continental Foundry & Machine Company,* 240 F.2d 369 (7th Cir. 1957). Under these circumstances, if this court were to reach the merits of this appeal, it would render an advisory opinion upon a moot question. This court will not declare rules of law that will have no effect on the case at bar.

Accordingly, appeal number one is moot and is hereby dismissed.

## II. Appeal Number Two

Appeal number two in this proceeding pertains to the January 6, 1976, order of the bankruptcy court rejecting the executory collective.bargaining agreements of the Le Baron Hotel.[1]

Relying on section 313(1) of the Bankruptcy Act, 11 U.S.C. § 713(1), the bankruptcy court authorized the receiver to re-ject the collective bargaining agreements between the Restaurant-Hotel Employers' Council of San Diego, Inc., and the Local Joint Executive Board of San Diego. Section 313(1) of the Act provides, in part, as follows:

> Upon the filing of a petition, the court may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere · in this chapter conferred and imposed upon it—
>
> (1) permit the rejection of executory contracts of the debtor . . .. 11 U.S.C. § 713(1).

Relying exclusively on § 313(1) of the Act, the bankruptcy court permitted the receiver to reject the executory collective bargaining agreements before it. The bankruptcy court order, entered January 6, 1976, provides:

> [T]he Receiver of the estate of the Debtor is hereby authorized to reject and be freed from the effect of that certain agreement entitled the Council Agreement 1973–1977 between the Restaurant-Hotel Employers' Council of San Diego, Inc., and Local Joint Executive Board of San Diego, et al. and any modifications or extensions thereof (hereinafter 'Collective Bargaining Agreement') subject to the condition that the San Diego Le Bar-

---

1. IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The Receiver for the estate of the Debtor is hereby authorized to reject and be freed from the effect of those certain contracts and leases related to the San Diego Le Baron Hotel as more particularly described hereinafter conditioned upon said hotel being sold to Atlas Hotels, Inc., in accordance with the Order of this Court dated December 15, 1975, affirming said sale. The leases, contracts and service agreements being rejected are set forth on Exhibit "A" hereto which is incorporated herein by this reference.

FURTHER ORDERED that the Receiver of the estate of the Debtor is hereby authorized to reject and be freed from the effect of that certain agreement entitled the Council Agreement 1973–1977 between the Restaurant-Hotel Employers' Council of San Diego, Inc., and Local Joint Executive Board of San Diego, et al. and any modifications or extensions thereof (hereinafter "Collective Bargaining Agreement") subject to the condition that the ·San

Diego Le Baron Hotel be sold to Atlas Hotels, Inc., in accordance with the December 15, 1975 Order of this Court affirming said sale.

FURTHER ORDERED that should the sale of San Diego Le Baron not be consummated in accordance with the aforedescribed Order, then all contracts, leases and service agreements, specifically including the Collective Bargaining Agreement are to remain in effect and all parties are to be in the same position as modified by their actions in the future as if the OCC's motion to reject executory contracts had not come before this Court for determination.

FURTHER ORDERED that in the event the aforedescribed sale is not consummated, this Order is entered without prejudice to the rights of the interested parties to bring on further proceedings to reject executory contracts, including but not limited to those set forth in this Order, upon due notice to the parties to such contracts sought to be rejected and such other and further parties as this Court deems appropriate.

on Hotel be sold to Atlas Hotels, Inc., in accordance with the December 15, 1975 Order of this Court affirming said sale.

In its January 6th order, the bankruptcy court expressly determined that Atlas Hotels, the purchaser of the Le Baron, was unwilling to assume the collective bargaining agreement between the union and the Employers' Council dated 1973–1977. The court found the debtor to be a party to that agreement by virtue of its membership in the Employers' Council. The court also determined that the collective bargaining agreement had been modified and extended from August 25, 1975 to October 31, 1980.

The union urges that the receiver was a party to the collective bargaining agreement and is an employer within the meaning of the National Labor Relations Act. On July 21, 1975, the receiver replaced the debtor in possession and took charge of operating the Le Baron Hotel. If the receiver was a party to the collective bargaining agreement, section 8(d) of the National Labor Relations Act governs the termination of the agreement.

■■ However, a pre-bankruptcy entity is not in the same position once a chapter proceeding commences. In *Shopmen's Local Union, No. 455, etc. v. Kevin Steel Products, Inc.*, 519 F.2d 698 (2nd Cir. 1975), the court concluded that a debtor in possession under Chapter XI or a trustee under Chapter X is not the same entity as a pre-bankruptcy company. The bankruptcy proceeding brings a debtor within the absolute jurisdiction of the bankruptcy court and imposes distinct rights and obligations. The bankruptcy entity is not an employer within the meaning of the National Labor Relations Act unless the entity becomes a party to the collective bargaining agreement. In order to make this determination, the court must examine the receiver's authority and actions.

The receiver in this proceeding was appointed by the bankruptcy court on July 21, 1975. He was authorized to continue to operate the business of the debtor upon the same terms and conditions prescribed for the debtor in possession. On October 11, 1974, the bankruptcy court had authorized the debtor to remain in possession and to continue to operate the business. The order provided:

> [T]he debtor in possession . . . is hereby authorized, subject to the control of this court, to operate its business and manage its property until further order of this Court, *to employ, discharge and fix the salaries and compensation of all employees . . . to enter into any contracts* incidental and usual to the operation of said business and the management and preservation of said property . . . .. (Emphasis added.)

This court is concerned with two questions in appeal number two. First, did the bankruptcy court err in authorizing the rejection of the 1973–1977 collective bargaining agreement? Second, did the bankruptcy court err in permitting the rejection of the modification and extension of the collective bargaining agreement entered into on August 25, 1975. The earlier agreement was entered into by the debtor, and arguably, the latter was entered into by the receiver.

### A. The 1973–1977 Agreement

■ The court will now turn its attention to the 1973–1977 agreement. The appellants urge that the provisions of § 313(1) do not authorize a bankruptcy court to reject an executory collective bargaining agreement. This argument has been recently disposed of by the Second Circuit in *Shopmen's Local Union, No. 455, etc. v. Kevin Steel Products, Inc., id.* In *Kevin Steel*, the court reviewed several authorities construing this section or similar sections to apply to collective bargaining agreements. The court then noted the broad language of the statute and compared its provisions with section 77(n) of the Bankruptcy Act, 11 U.S.C. § 205(n), where Congress excepted railroad employees' wages and working conditions from the jurisdiction of the bankruptcy court or trustee. Congress exempted certain labor agreements from section 77(n); the failure to so limit section 313(1) indicates that Congress did not intend to

apply any similar restrictions to section 313(1).

The appellant suggests that the receiver assumed this collective bargaining agreement; therefore, the bankruptcy court could not subsequently authorize its rejection. There seems to be support for this position. In *In re Wil-Low Cafeterias, Inc. (Siegel v. Schulte)*, 111 F.2d 83 (2nd Cir. 1940), with court approval, an officer of the court (a trustee) had affirmed certain subleases; the Second Circuit found it incredible that a subsequently appointed officer needed to reaffirm said subleases or had any authority to disaffirm, "absent extraordinary circumstances." The appellant maintains that extraordinary circumstances are lacking, and the rejection of the 1973–1977 collective bargaining agreement was improper.

■ A threshold question is whether the bankruptcy court authorized the receiver to assume the 1973–1977 collective bargaining agreement. The October 11, 1974 order authorizing the receiver to operate the business does not, in itself, confer unlimited authority to operate the Le Baron Hotel. *See generally* 8 Collier on Bankruptcy ¶ 6.35[8] pp. 961–65 (14th ed. 1976). Parties dealing with a receiver are charged with knowledge of the extent of any restrictions upon his authority. *In re Yellow Transit Freight Lines*, 207 F.2d 602, 606 (7th Cir. 1953).

■ The October 11 order did not expressly authorize the assumption of the collective bargaining agreement at issue. However, the fact that specific authority was not conferred does not end the inquiry. Assumption of the instant agreement may have been within the general authority conferred upon the receiver, but that authority is strictly construed. *See In re Wil-Low Cafeterias, Inc. (Kaftan v. Siegel)*, 111 F.2d 429 (2nd Cir. 1940). In *Wil-Low Cafeterias*, the court interpreted an order authorizing the debtor in possession to operate the business and employ personnel, stating:

It does not seem to us that these provisions required the debtor to apply to the court in order to make the simple and

usual contracts of hiring necessary to the authorized conduct of the business and our decision in *Re [sic] Avorn Dress Co.*, 2 Cir., 78 F.2d 681, 683, we think bears this out. It may be that the court would have had the power to rescind such a contract so far as it remained unperformed, but no such thing was attempted. *Id.* at 431.

The *Wil-Low* court construed the order before it as authorizing the debtor in possession to enter a collective bargaining agreement. *A fortiori*, the *Wil-Low* order could have been construed to authorize the debtor in possession to assume an existing collective bargaining agreement.

■ In *Wil-Low*, the court recognized the executory contract for the purpose of awarding benefits accrued under the contract. As discussed more fully below in relation to the modified collective bargaining agreement, the court order authorizing the receiver to continue to operate the Le Baron Hotel did not authorize the receiver to unilaterally assume or enter into a long term collective bargaining agreement.

In *Wil-Low Cafeterias (Siegel v. Schulte)*, *supra*, the court held that a sublease adopted by the debtor in possession, with the approval of the court, could not be disaffirmed by a subsequently appointed trustee, absent unusual circumstances.

The matter appears to be far from clear. For example, in *Texas & N.O.R. Co. v. Phillips*, 196 F.2d 692 (5th Cir. 1952), the court noted that the assumption of a lease had been authorized in the case before it, but nevertheless, the Fifth Circuit stated that court authorization was not necessary for the assumption of a lease.

■ By its terms, section 313(1) of the Bankruptcy Act provides for the rejection of contracts of the debtor. The court should exercise its power to reject an executory contract where rejection is to the advantage of the estate, but where the contract benefits the estate, rejection should not occur. This section is designed to facilitate reorganization by relieving the debtor of contractual obligations that unduly bur-

den the estate. During reorganization, a contract that once was in the debtor's best interest may be set aside because it no longer benefits the bankruptcy entity.

While the section authorizes the rejection of executory contracts, it does not provide for the assumption of executory contracts. The right to assume executory contracts may be implied from the court's express power to reject. The failure to assume an executory agreement does not constitute a rejection under § 313(1). 8 Collier on Bankruptcy ¶ 3.15[6], p. 204 (14th ed. 1976). The assumption or rejection of executory agreements involving future rights and obligations should be the product of a thorough analysis by the court.

■■■ A Chapter XI arrangement is concerned with the rehabilitation of the debtor and requires close judicial supervision. The assumption or rejection of executory agreements affects the outcome of the chapter proceeding and should proceed under the supervision of the court. This conclusion is buttressed by an examination of similarly worded provisions of the Bankruptcy Act. Section 70(b) is illustrative and reads:

> The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed rejected. . . . A trustee shall file, within sixty days after adjudication or within thirty days after he has qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected . . . . 11 U.S.C. § 110(b).

This section requires the bankruptcy trustee to assume or reject the executory contracts of the bankrupt. It also requires the trustee to file a statement under oath indicat-

ing which contracts are executory and which have been rejected. Subject to the court's general supervision, section 70(b) authorizes the trustee to reject those executory contracts believed to be detrimental to the estate.

Prior to the passage of the Bankruptcy Act of 1938, it was generally assumed that the bankruptcy trustee was authorized to assume or reject the executory contracts of the bankrupt. Some courts disputed the finality of the trustee's decision and urged that the trustee's act was a mere suggestion or application to the court, which ultimately authorized the trustee to assume or reject the executory contract. 4A Collier on Bankruptcy ¶ 70.43, pp. 517–19 (14th ed. 1976).

■■■ Section 70(b) is merely declaratory of case law prior to the Act of 1938. Rule 607 of the Bankruptcy Rules sheds additional light on the authority of a trustee to assume the executory contracts of the bankrupt. The rule, based upon the provisions of section 70(b), provides as follows:

> Within 30 days after the qualification of the trustee, unless the court for cause shown extends or reduces the time, the trustee shall file a statement showing any executory contracts of the bankrupt, including unexpired leases, which the trustee has assumed. Whenever practicable, the trustee shall obtain approval of the court before he assumes a contract.

Requiring court approval before the assumption of an executory contract is in accord with prior case law. *In re Grainger*, 160 F. 69, 75 (9th Cir. 1908).

Under section 70(b), an apparent conflict exists between the powers of the bankruptcy trustee vis-a-vis the powers of the bankruptcy court. The section appears to authorize the trustee to unilaterally reject the bankrupt's executory contracts. If viewed otherwise, the provision of § 70(b) requiring the trustee to file a statement setting forth those contracts which have been rejected would be superfluous.

■■■ Section 70(b) is silent regarding a statement of executory contracts which

have been assumed by the trustee. The assumption of any executory agreements results in the addition of expenses to the estate. Additional liabilities should be assumed in limited circumstances. Only where the executory contract would inure to the benefit of the estate is assumption warranted, and the assumption of an executory contract should proceed under the court's scrutiny. As the leading commentator states:

> The general rule that economy of administration calls for close, strict, and active control by the court of all administrative expenditure seems to lead to the conclusion that it is improper for a trustee to assume executory contracts on his own responsibility (footnote omitted). 4A Collier on Bankruptcy ¶ 70.43[5], p. 531 (14th ed. 1976).

This rationale is even more persuasive if the assumption of an executory contract will bind the estate in the future rather than merely establish a priority as an administrative expense.

■ Section 70(b) of the Bankruptcy Act and rule 607 of the Bankruptcy Rules indicate that the proper procedure for assuming the executory contracts of the bankrupt is for the trustee to apply to the court for an order authorizing the assumption of those contracts the trustee determines benefit the estate. The court then rules on the trustee's application.

■ Under section 116(1) of the Bankruptcy Act, the power to reject an executory contract is lodged exclusively with the judge upon the approval of a reorganization petition. Section 116(1) of the Act provides:

> Upon the approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon him and the court—
> (1) permit the rejection of executory contracts of the debtor, except contracts in the public authority, upon notice to the parties to such contracts and to such other parties in interest as the judge may designate. 11 U.S.C. § 516(1).

The section does not expressly provide for the assumption of an executory contract, but it is generally recognized that the assumption of an executory contract requires the express approval of the court and not merely the unilateral decision of the trustee in bankruptcy. *In re American National Trust,* 426 F.2d 1059, 1064 (7th Cir. 1970); *Texas Importing Company v. Banco Popular de Puerto Rico,* 360 F.2d 582, 584 (5th Cir. 1966); *In re Wil-Low Cafeterias, Inc. (Siegel v. Schulte), supra.*

■ Section 313(1), 11 U.S.C. § 713(1), provides that "upon the filing of a petition, the court may . . . permit the rejection of executory contracts of the debtor . . . ." In a Chapter XI proceeding, executory contracts of the debtor can be rejected only in accordance with sections 313(1) or 357(2). The contracts will continue in effect until rejected. Until an executory agreement is either rejected or assumed, the other party to the contract with the debtor is in an unenviable position. Until the contract is rejected, the holder of the agreement is not a creditor with a provable claim. *In re Greenpoint Metallic Bed Co., Inc.,* 113 F.2d 881, 884 (2nd Cir. 1940). And without the approval of the court the executory agreement cannot be assumed. 8 Collier on Bankruptcy ¶ 3.15[11] p. 208 n. 41 (14th ed. 1976).

■ The appellants cite *In re Public Ledger,* 161 F.2d 762, 767 (3rd Cir. 1947), for the proposition that where a trustee does not expressly accept a collective bargaining agreement, his knowing conformance to the terms of the agreement constitutes an acceptance thereof. In *Public Ledger,* the bankruptcy court had authorized the continuation of the business by the trustees for various short periods of time. The Third Circuit concluded: "It is unreasonable to assume that the court contemplated anything but the continuance of the labor contract as the basis for the continued services of the employees." *Id.* at 767. *Public Ledger* involved § 70(b) of the Bankruptcy Act. The court failed to differentiate between a failure to reject an executory

agreement and the assumption of an executory agreement. The latter does not follow from the former. 8 Collier on Bankruptcy ¶ 3.15[11] (14th ed. 1976).

 The appellees cite *Pacific Western Oil Company v. McDuffie*, 69 F.2d 208 (9th Cir. 1934), for the proposition that a receiver does not adopt an existing contract by taking possession of property to which the contract relates. The court stated, *id.* at 213:

> In order for a receiver to become bound by a contract, he must positively indicate his intention to adopt it; the receiver is not bound until he has affirmed it and assumed its burdens under the direction of the court. . . . The appellant urges that, by the conduct of the receiver in accepting deliveries at market price and to the amount stipulated in the contract, the receivership became bound to pay as an expense of administration for oil delivered before the inception of the receivership. We think this argument is unsound.

A review of the case law and the related provisions of the Bankruptcy Act compels the conclusion that the receiver could not assume the collective bargaining agreement without the approval of the bankruptcy court. The court did not authorize the assumption of the 1973–1977 collective bargaining agreement. Even if the executory contract could have been assumed without the approval of the court, the acts of the receiver did not indicate a positive intention to assume the collective bargaining agreement. For these reasons, the receiver cannot be held to have assumed the collective bargaining agreement in this case, and the court properly authorized the rejection of that contract.

 Assuming that the court could authorize the rejection of the contract, the appellant suggests that the circumstances of this case did not warrant rejecting the 1973–1977 collective bargaining agreement. The bankruptcy court authorized the rejection of the collective bargaining agreement in order to facilitate the sale of the Le Baron properties. The court found the sale to be in the best interest of the estate. This court will not disturb this finding unless it can be determined that the finding is clearly erroneous. Rule 810 Bankruptcy Rules of Procedure.

 Under section 313(1) of the Bankruptcy Act, the court may permit the rejection of the debtor's executory contracts. The power to reject executory contracts lies within the discretion of the court. 8 Collier on Bankruptcy ¶ 3.15[8], p. 207 (14th ed. 1976). The court should exercise this power where rejection of the executory contract is to the advantage of the estate. The bankruptcy court determined that the rejection of the executory contract would facilitate the sale of the Le Baron properties, benefiting the estate. These findings are not clearly erroneous. The bankruptcy court's decision to permit the rejection of the 1973–1977 collective bargaining agreement will not be disturbed. This court must now direct its attention to that portion of the bankruptcy court order purporting to reject the August 18, 1975 modified collective bargaining agreement.

### B. 1975–1980 Modified Collective Bargaining Agreement

On January 6, 1976, the bankruptcy court authorized the receiver to reject any modifications or extensions of the 1973–1977 collective bargaining agreement, provided the sale of the Le Baron Hotel to Atlas Hotels, Inc. was consummated in accordance with the December 15, 1975 order of the bankruptcy court.

 This court has concluded that the bankruptcy court properly authorized the rejection of the existing collective bargaining agreement, but the modified executory agreement stands on a slightly different footing. If a court officer, debtor in possession or receiver, is authorized to enter into executory agreements or modify existing executory agreements, the bankruptcy court cannot subsequently reject the same, absent exceptional circumstances. See *In re Wil-Low Cafeterias, Inc. (Siegel v.*

**790**

*Schulte), supra* at 86; 8 Collier on Bankruptcy ¶¶ 3.15[11], 6.32[4], pp. 209, 933–936 (14th ed. 1976). If the receiver was authorized to modify the existing collective bargaining agreement, the bankruptcy court could not ordinarily permit the rejection of the same.

In the case at bar, the receiver was authorized to operate the business of the debtor upon the terms and conditions that had been prescribed for the debtor in possession. The July 21, 1975 order stated:

> The receiver is hereby authorized to continue to operate the business of the debtor until further order of this Court on the same terms and conditions as previously prescribed for the debtor in possession in prior orders entered herein, which orders are attached hereto as Exhibits A through K, and incorporated herein by reference.

Exhibit A to the July 21, 1975 order was the October 11, 1974 order of the court authorizing the debtor to remain in possession and continue to operate the Le Baron. The order provides, in part, as follows:

> [I]t is FURTHER ORDERED, that the debtor in possession be, and it is hereby authorized, subject to the control of this Court, to operate its business and manage its property until further order of this Court, *to employ, discharge and fix the salaries and compensation of all employees,* excepting the President and Chief Executive Officer, Vice-President of Finance, Executive Vice-President of Operations and Corporate Controller; to buy materials and supplies as necessary and appropriate for the operation of the debtor business; *to enter into any contracts incidental and usual to the operation of* said business and the management and preservation of said property. . . . (Emphasis added.)

■ This court must ascertain the scope of the receiver's authority in light of the order of the bankruptcy court. The powers of a receiver, trustee or debtor in possession are not limitless. When an officer of the bankruptcy court is authorized to operate the business, the court order authorizing the continued operation of the business delimits the powers of the officer.

■ A contracting party dealing with a bankruptcy official is charged with knowledge of the extent of his authority. 8 Collier on Bankruptcy ¶ 6.35[8] (14th ed. 1976). The appellant knew that a Chapter XI petition had been filed and did not inquire as to the scope of the receiver's authorization to operate the debtor business. The appellant is charged with the knowledge that the initiation of bankruptcy proceedings vested the court with exclusive jurisdiction over the appellee Le Baron Hotels, Inc. *In re Yellow Transit Freight Lines, supra.* A conscious disregard of any limitations upon the authority of the receiver will not compel validation of an unauthorized contract.[2] Parties dealing with the receiver, trustee or debtors in possession must proceed with care, for courts will not recognize contracts made by the receiver, trustee, or debtor outside their limited authority. *In re Avorn Dress Co., Inc.,* 79 F.2d 337 (2nd Cir. 1935).

This court need not parse the July 21, 1975 order of the bankruptcy court to determine the scope of the receiver's authority to operate the debtor business. Even if the court order did not confer the specific authority to enter into executory agreements of this nature, the modification of the collective bargaining agreement may have been within the general authority conferred upon the receiver. However, the scope of the receiver's general authority will be strictly construed.

2. In exceptional instances, some courts have granted equitable relief to careless lenders and retroactively validated unauthorized loans so that the loans would receive priority as administrative expenses. *In re Public Leasing Corporation,* 344 F.Supp. 754 (W.D.Okl.1972); *Wolf v. Nazareth Fair Grounds and Farmers' Mar-* ket, *Inc.,* 280 F.2d 891 (2nd Cir. 1960); *Todd v. Zoda,* 188 F.2d 84 (2nd Cir. 1951). However, this court will not retroactively approve an otherwise unauthorized executory contract that will bind the debtor business beyond the reorganization period.

Authority to operate a business may contemplate entering into some sort of collective bargaining agreements. The debtor in *In re Wil-Low Cafeterias, Inc. (Kaftan v. Siegel), supra,* was authorized to continue to operate the business and perform existing contracts. The debtor in possession was authorized to "employ such managers, agents, employees, servants, . . . as may in its judgment be advisable or necessary in the management, conduct, control or custody of the affairs of the debtor . .." *Id.* at 431. On April 20, 1937, the debtor filed a petition for reorganization, and on the same date, the debtor was authorized to continue to operate the business. On May 11, 1938, without the approval of the court, the debtor entered into a collective bargaining agreement which provided for the accrual of vacation pay. The Second Circuit held that the order of the court did not require the debtor in possession to seek court approval to enter into contracts of hiring necessary to the continued operation of the business. In holding that vacation pay earned prior to liquidation was an administrative expense, the court suggested:

> It may be that the court would have had the power to rescind such a contract so far as it remained unperformed, but no such thing was attempted. *Id.* at 431.

▉ The appellant maintains that the receiver entered into the modified collective bargaining agreement, and the agreement cannot be subsequently disaffirmed. The decision to bind the Le Baron Hotel to the terms of the modified collective bargaining agreement was not one to be made unilaterally by the receiver. *See generally Newport v. Sampsell,* 233 F.2d 944, 946 (9th Cir. 1956). The order authorizing the receiver to operate the Le Baron Hotel did not contemplate entering into a modified collective bargaining agreement that would be binding in the future.

In *Chicago Deposit Vault Co. v. McNulta,* 153 U.S. 554, 561, 14 S.Ct. 915, 918, 38 L.Ed. 819 (1894), the Supreme Court commented on the authority of a receiver to operate a business, stating:

> It is undoubtedly true that a receiver, without the previous sanction of the court, manifested by special orders, may incur ordinary expenses or liabilities for supplies, material, or labor needed in the daily administration of railroad property committed to his care as an officer of the court; but it seems equally well settled that the courts decline to sanction the exercise of this discretion on the part of receivers in respect to large outlays, or contracts extending beyond the receivership, and intended to be binding upon the trust.

The order authorizing the receiver to continue to operate the business of the debtor, did not grant the receiver the authority to enter into or adopt the modified collective bargaining agreement between the Restaurant-Hotel Employers' Council of San Diego, Inc. and the Local Joint Executive Board of San Diego. The receiver could not have entered into this executory agreement without court approval, which was neither obtained nor sought. The bankruptcy court need not retroactively validate the receiver's unauthorized collective bargaining agreement. The bankruptcy court expressed its intention not to recognize the unauthorized agreement; the court sought to permit the receiver to reject the agreement.[3]

---

3. In light of the conclusions reached above, this court need not determine whether, under the provisions of § 313(1), a court can authorize the rejection of contracts of the receiver. Section 313(1) permits the court to reject contracts of the *debtor.* Section 306 of the Act defines a Chapter XI debtor as follows:

> (3) 'debtor' shall mean a person who could become a bankrupt under section 4 of this Act and who files a petition under this chapter. 11 U.S.C. § 706(3).

A court permits the rejection of executory contracts of the *debtor* in order to benefit the estate. But contracts entered into by a *receiver* are presumed to be for the benefit of the estate. The rationale underlying § 313(1) does not seem applicable to contracts of the receiver. This court is not required to wrestle with this problem at this time.

The receiver was not authorized to enter into a modified collective bargaining agreement, and the bankruptcy court did not validate the receiver's unauthorized acts. Even assuming that the receiver was a party to the modified collective bargaining agreement, this court will not recognize the modified contract because it exceeded the scope of the receiver's authority. The receiver could not obligate the business of the debtor beyond the receivership. The unauthorized collective bargaining agreement did not pass from the receiver to the purchaser of the Le Baron Hotel, Atlas Hotels, Inc. The sale of the Le Baron Hotel was not encumbered by the modified collective bargaining agreement.

The bankruptcy court properly authorized the rejection of the 1973–1977 collective bargaining agreement. Because the receiver lacked the authority to enter into the modified collective bargaining agreement, this court need not consider whether the bankruptcy court properly authorized the rejection of the modified executory contract. The rejection of the unauthorized 1975–1980 collective bargaining agreement was gratuitous. Accordingly, appeal number one is hereby dismissed as moot, and the orders of the bankruptcy court reviewed in appeal number two are affirmed and will not be disturbed.