## AMICK v. HOTZ.*

### In re ATLANTIC, PACIFIC & GULF OIL CO.

#### Nos. 11273, 11281.

Circuit Court of Appeals, Eighth Circuit.

Feb. 8, 1939.

Dupuy G. Warrick, of Kansas City, Mo. (R. B. McCreight and Borders, Warrick & Hazard, all of Kansas City, Mo., on the brief), for appellant.

William J. Hotz, of Omaha, Neb. (Charles C. Madison, of Kansas City, Mo., and Robert H. Hotz, of Omaha, Neb., on the brief), for appellee.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

These are appeals from an order directing E. E. Amick, trustee in bankruptcy of Atlantic, Pacific and Gulf Oil Company, to pay over $6,206.36 to Wm. J. Hotz, trustee of Equity Finance and Investment Corporation.

In June, 1934, the Atlantic, Pacific and Gulf Oil Company (which will be referred

*Rehearing denied March 4, 1939.

to as "the Atlantic") and the Equity Finance and Investment Corporation (which will be referred to as "the Equity") were both in receivership in the District Court of the United States for the Western District of Missouri. Nelson E. Johnson was receiver of the Atlantic, having been appointed in 1931, and M. Hanley was the receiver of the Equity. Johnson was an operating receiver authorized to continue the business of the Atlantic, which was the purchase and sale of petroleum products. The order of authorization is not in the record, but the court below, in its opinion in this case, says of it: "Such order was broad enough to enable the receiver to borrow money and to pledge the free assets of the company as security. Such order did not undertake to provide that contract liens previously placed on such assets, if any, should be supplanted. It contemplated only the use of free or unencumbered assets to enable the receiver to obtain credit to carry on the usual operations of the company."

On June 10, 1934, Johnson, receiver, made application to the court for authority to borrow from Hanley, receiver, $10,000 and to pledge, as security for the loan, the fuel oil belonging to the trust estate stored in certain tanks in Kansas City. Hanley, receiver, at the same time made application to the court for authority to loan to Johnson, receiver, $10,000 upon the security of this pledge. The court, without requiring notice to creditors, granted the applications on June 12, 1934. Hanley, receiver, thereupon loaned to Johnson, receiver, the $10,000, and took a note and a chattel mortgage upon the fuel oil, which was subject to no prior lien. Shortly thereafter, the Atlantic went into reorganization under Section 77B of the Bankruptcy Act, § 207, Title 11, U.S.C., 11 U.S.C.A. § 207, and Johnson was appointed temporary trustee. From time to time he sold portions of the pledged fuel oil and applied the proceeds to the reduction of the $10,000 loan. The Equity also went into reorganization under Section 77B, in the United States District Court for the District of Nebraska, and Hanley, receiver, was succeeded by Mary A. Mullen and Thomas C. Mustain as trustees, and they were succeeded by Wm. J. Hotz, trustee. The $10,000 loan was, by the application of the proceeds of the sale of fuel oil, reduced to $6,761.48. The balance was not paid. Application was finally made for authority to foreclose the chattel mortgage. By that time, Johnson, trustee, had been succeeded by Amick, trustee.

Amick, trustee, opposed the granting of any authorization to foreclose the chattel mortgage, on the ground that it was void because no notice of the application for authority to execute the mortgage was ever given to creditors. Under an agreement between the trustee of the Atlantic and the trustee of the Equity, the pledged oil was sold, and the proceeds, amounting to $6,206.36, were placed in a separate fund to await the outcome of the controversy. The referee in bankruptcy held that the mortgage was void because the court, in the absence of notice to creditors, was without jurisdiction to authorize its execution. On petition to review, the court below reversed the referee and held that the mortgage was valid and that the proceeds of the sale of the fuel oil should be paid to Hotz, trustee, in full satisfaction of the chattel mortgage.

So far as the merits of this controversy are concerned, the sole question presented is whether a chattel mortgage given by an operating receiver to secure a loan, with the sanction of the court but without notice to creditors, is void.

The lower court's jurisdiction of the receivership, at the time the chattel mortgage in suit was given, is not challenged.

■ The general rules of law applicable to the making of loans and the giving of security by a receiver are not in serious dispute. A receiver cannot, without authority from the court, borrow money and pledge the assets of a trust estate, and, if he does so, the loan is not a charge upon the estate. Northern Finance Corporation v. Byrnes, 8 Cir., 5 F.2d 11, 12, 13; Byrnes v. Missouri Nat. Bank, 8 Cir., 7 F.2d 978, 980; Real Estate-Land Title & Trust Co. v. Commonwealth Bond Corp., 2 Cir., 63 F.2d 237, 239; United States v. Kenna, D.C., 19 F.2d 239; In re Erie Lumber Co., D.C., 150 F. 817, 830; McNamara v. Hart, 8 Cir., 83 F.2d 649, 651–652; In re Avorn Dress Co., Inc., 2 Cir., 79 F.2d 337, 338.

■ A loan and pledge made by a receiver who has been duly authorized by the court to make it will be enforced.

In Byrnes v. Missouri Nat. Bank, supra, 7 F.2d 978, 980, this Court said: "The court below had the judicial power, after hearing or giving the parties in interest a chance to be heard, to authorize its receiver to borrow money in specific amounts and on specific terms and to secure the repayment of that money by a pledge or mortgage of some or all of the property of the lumber company, subject to prior liens."

In Re Erie Lumber Co., D.C., 150 F. 817, 828, the court said: "The power to continue business implies the power to make debts, and to provide for their payment, which must include the power to borrow money for urgent necessities and for direct operating expenditures."

There is a dearth of authority as to what effect a failure to give notice to creditors of an application by a receiver for permission to borrow money has upon the order granting the application, and we find no case which holds that notice is jurisdictional and that such an order, entered without notice, is void. That the entry of such an order without notice might constitute a serious abuse of discretion, we have no doubt, but it is our opinion that lack of notice does not render such an order a nullity. The entry of the order may amount to an irregular exercise of a jurisdiction which the court possesses, and lack of proper notice would, no doubt, form a basis for a seasonable application to the court to vacate the order on the ground that it was improvidently entered.

The order authorizing Johnson, receiver, to borrow this money and to pledge the fuel oil was filed in the receivership proceedings. The order was made upon the representation by the receiver that it was necessary for him to have this money to continue the business and was for the best interests of the trust estate. The court had jurisdiction of the subject matter and of all persons who were parties to the proceedings. All such persons had constructive notice of the orders entered in the proceedings. It was incumbent upon them to protect their rights and to call to the attention of the court any matters which they regarded as being prejudicial to their interests. See Ritchie v. McMullen, 159 U.S. 235, 241, 16 S.Ct. 171, 40 L.Ed. 133; Peeke v. Citizens Banking Co., 6 Cir., 81 F.2d 112, 115; In re Erie Lumber Co., D.C., 150 F. 817, 828.

In Union Trust Co. v. Illinois Midland R. Co., 117 U.S. 434, 460, 6 S.Ct. 809, 823, 29 L.Ed. 963, the Supreme Court quoted with approval the following language from an opinion of Mr. Justice Harlan with reference to the rights of prior lien-holders as against the holders of receiver's certificates: "When such prior lienholders are brought before the court, they become entitled, upon the plainest principles of justice and equity, to contest the necessity, validity, effect, and amount of all such certificates, as fully as if such questions were then for the first time presented for determination. If it appears that they ought not to have been made a charge upon the property superior to the lien created by the mortgages, then the contract rights of the prior lienholders must be protected. On the other hand, if it appears that the court did what ought to have been done, even had the trustee and the bondholders been before it when the certificates were authorized to be issued, the property should not be relieved from the charge made upon it, in good faith, for its protection and preservation. * * * Nor have the bondholders any ground of complaint if the court charges upon the property such expenditures as now appear to have been rightfully made in the interest of all concerned in its management while in the hands of a receiver."

In Northern Finance Corporation v. Byrnes, supra, 5 F.2d 11, 13, this Court said, with reference to unauthorized expenditures of receivers: "Where a court finds an unauthorized expenditure to have been beneficial to the estate, it may adopt and allow the same, notwithstanding previous lack of authority; but exceptions should not be allowed to become the rule, and should be made only in the most clear cases."

These authorities militate against the contention that notice to creditors is jurisdictional.

It is true that in this case it does not now appear that it was necessary for the preservation of the trust estate, or for its benefit, that Johnson, receiver, borrow this money for the purpose of continuing the business; but, at the time the loan was authorized, the court did not know that Johnson was operating at a loss, and was of the opinion that it was necessary and desirable that the loan be made. The court below says in its opinion: "On June 10, 1934, the receiver filed his application to borrow the sum of $10,000 from M. Hanley, Receiver of Equity Finance & Investment Corporation. Such application specified that the profitable operations of the company required the purchase of a quantity of fuel oil, the sale of which was then on contracts previously made with sundry patrons. The application was supported by reasonable representations then made by the receiver. The court had been made acquainted with the purchase and sale of fuel oil during the previous summers of 1932 and 1933. It is not now recalled whether money was borrowed in order to aid the operations during those seasons."

There is nothing in the record to show that if notice had been given to the creditors of the application of Johnson, receiver, for authority to borrow $10,000, the application would not have been granted, and nothing to show that the creditors were in any way prejudiced by lack of notice. Had it not been for the fact that Johnson's conduct of the business of the Atlantic resulted in large losses (see United States v. Johnson, et al., 8 Cir., 98 F.2d 462, 465) it is fair to assume that this controversy would never have arisen. Compare In re Erie Lumber Co., D.C., 150 F. 817, 827.

The trust estate of the Atlantic received the $10,000 from the trust estate of the Equity. At least temporarily, it enhanced the assets in the hands of Johnson, receiver, to the same extent that it diminished the assets in the hands of Hanley, receiver. There is no justification for penalizing the creditors of the Equity because Johnson, receiver, operated his business unsuccessfully and subjected the trust estate in his hands to large operating losses.

We think the court below was right in directing the trustee of the Atlantic to pay over to the trustee of the Equity the $6,206.36 derived from the proceeds of the pledged oil.

 Amick, trustee, also contends that the court below should not have entertained the petition for review because it was taken out of time. Neither the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., nor the General Orders in Bankruptcy, 11 U.S.C.A. following section 53, required that petitions for review should be filed within a specified time. Rule XXVIII of the court below provided: "Whenever a review by the judge of any order made by the referee is desired, a petition therefor shall be filed with the referee, pursuant to General Order XXVII, within ten days after the filing of such order, unless such time shall be extended by the referee or judge, upon cause shown. Failure to file such petition for review, within such time, unless the time therefor shall be extended upon due cause shown, or within such extended time, shall be deemed a waiver of all right to a review."

Hotz, trustee, did not file his petition for review within ten days. He evidently did not know of Rule XXVIII. The referee's order was made on May 3, 1937. Hotz, trustee, presented his petition for review on May 22, 1937. Accompanying it was an application for an extension of time in which to file it, together with an affidavit supporting such application. The referee granted the application. The court below held that there was a sufficient compliance with Rule XXVIII, and that, no appeal having been taken from the referee's order granting an extension of time within which the petition for review might be filed, that order had become final. The rule of the court below clearly contemplated that a petition for review might be filed after ten days under an order made by the court or the referee extending the time. We are not called upon to consider whether the referee or the court below should have regarded the showing made by Hotz, trustee, as insufficient to justify an extension. That was essentially a question for the court of bankruptcy.

 The appellant secured an allowance of his appeal by this Court and by the court below. It is unimportant which appeal was properly taken.

The order appealed from is affirmed.