In re GLORIA MANUFACTURING
CORPORATION, Debtor.

Ronald E. BENSTEN,
Trustee, Appellant,

v.

Edward G. GRANT, Appellee.

ILGWU INTERNATIONAL and Upper
South Department, Appellant,

v.

Ronald E. BENSTEN, Appellee.

UNITED STATES of America,
Appellant,

v.

Edward G. GRANT and Ronald E.
Bensten, Appellee.

Bankruptcy No. 81–00596–NN.
Civ. A. Nos. 85–59–NN, 85–66–NN
and 85–67–NN.

United States District Court,
E.D. Virginia,
Newport News Division.

Aug. 20, 1985.

Marc E. Richards, New York City, for ILGWU, etc.

Ronald E. Bensten, Newport News, Va., for Bensten.

David H. Adams, Norfolk, Va., for Grant.

Raymond A. Jackson, Asst. U.S. Atty., Norfolk, Va., for U.S.

## OPINION AND ORDER

KELLAM, District Judge.

### I.

On December 11, 1981, Gloria Manufacturing Corporation (Gloria) filed for relief under Chapter 11 of the Bankruptcy Act, 11 U.S.C. § 1101 et seq. Gloria was situated in Newport News, Virginia, and was engaged in the business of a garment manufacturer and processor. On May 28, 1982, Edward G. Grant (Grant) was appointed as Trustee. The debtor continued to operate the business under Chapter 11 until February 28, 1983, when the Chapter 11 proceedings were converted into a Chapter 7 proceedings. The continued operation of the business thus permitted it to be later sold as a going concern.

During the time of the operation by Grant, as Trustee, when the weekly payrolls for the employees at the plant for the weeks ending December 3 and December 10 became due, there were no funds with which to pay them. The Trustee did not learn of this fact until time to make up the payroll and pay the employees. He advanced funds totaling $46,479.45, of which $10,000.00 was shortly thereafter returned to him. It had been expected that the balance would be forthcoming quickly. When the additional sum was not promptly returned, Grant took steps to have his claim established as one prior to other claims or expenses. He asserted that the urgent need of funds to meet the payroll, and lack of time, prevented him from first making an application to the Court to have such advance and loan given approval, as provided for in section 364(c) of the Bankruptcy Act, 11 U.S.C. § 364(c).[1] Before the balance of the advance or loan was repaid, the bankruptcy action was converted to a Chapter 7 Proceedings, 11 U.S.C. § 701 et seq. Thereafter, in April 1983, Grant applied to the Court for an order granting him priority on his loan over any and all other sums, as permitted by and in accordance with 11 U.S.C. § 364(c).[2] Pursuant to notice and hearing, the Bankruptcy Court by order of April 22, 1983, granted the motion, limiting the priority of the claim "only to allowed administrative expenses in the Chapter 7 proceedings." The language of the order set forth:

ADJUDGED, ORDERED and DECREED that the balance due Edward G. Grant, the Chapter 11 Trustee, of $36,479.45, without interest, is allowed as an Administrative Expense of the Chapter 11 Proceedings had herein, as the same were actual and necessary costs and expenses of preserving the estate, and *which are subordinated only to allowed Administrative Expenses in these Chapter 7 Proceedings* ... (emphasis added)

No appeal was taken from that order, although the ILGWU International and Upper South Department (Union) and the Chapter 7 Trustee were present, and all others had been given notice of the hearing. The order provided that the sum was allowed without interest. By application filed July 18, 1983, Grant sought an order directing the Chapter 7 Trustee to immediately make payment of his claim of $36,479.45. Following notice and a hearing held August 12, 1983, attended by the Chapter 7 Trustee and the attorney for the debtor, the Bankruptcy Court declined to order immediate payment, because, as its minute shows:

1.  there may be higher claims than that of Mr. Grant;

2.  Chapter 7 expenses are paid ahead of Chapter 11.

When payment was not immediately directed, Grant filed a motion for allowance of interest on the loan. By order of September 20, 1983, the Court provided that the $36,479.45 claim should bear interest from April 22, 1983, at 12 percent per annum.

## II.

On February 7, 1985, Grant again filed a petition for an order directing the Chapter 7 Trustee to immediately make payment to him of his claim of $36,479.45, with interest, as having a priority over other administrative expenses in the Chapter 11 proceedings. In addition, Grant set forth that there was due to him for compensation as Trustee $14,321.70 and reimbursement ex-

---

1.  11 U.S.C. § 364 provides how a Trustee who is authorized to operate a business may secure credit, and if he is unable to obtain unsecured credit, he may do so under § 364(c). That section provides:

    § 364. Obtaining Credit

    (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title [11 USCS § 503(b)(1)] as an administrative expense the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

    (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title [11 USCS §§ 503(b), 507(b)];

2.  The application did not specify § 364(c) and referred to making the loan a part of administrative expenses.

penses of $1,236.24. The application further set forth that there were sufficient funds in the hands of the Chapter 7 Trustee, after paying the Chapter 7 administrative expenses, to pay said sums. At a hearing on said application held March 15, 1985, after notice, the Court by order entered March 22, 1985, directed the Chapter 7 Trustee to forthwith pay to Grant the sums allowed him by the orders of April 22 and September 20, 1983. But, the order did not direct payment of the compensation and expense reimbursement sums. As to the order of March 22, 1985, the Chapter 7 Trustee, the United States,[3] and Union appealed. The United States also filed a motion for the Bankruptcy Court to reconsider its order. By order of April 10, 1985, the Bankruptcy Court denied the motion to reconsider; affirmed its granting of the priority permitted by § 364(c); and set forth that Grant was entitled to the § 364(c) priority and it had been the intention of the Court to grant such a priority in 1983. To the appeals, Grant filed a motion to dismiss, asserting the orders of March 22 and April 10, 1985 were not final orders, and therefore not appealable orders; that they merely directed the performance of a ministerial act; and that the time within which an appeal could be taken from the orders of April 22 and September 20, 1983 had long passed. Appellants asserted that the orders of March 22 and April 10, 1985 established Grant's claim as a prior claim under § 364(c), which the orders of 1983 had not done; and that the 1983 orders merely classified Grant's claim as an administrative expense in the Chapter 11 proceedings. The Court, by order and opinion of July 17, 1985, denied the motion to dismiss, finding that the appeal was from the orders of 1985. The Court did not reach the issue of whether the appeal sought to challenge the 1983 orders at that time. The parties were then directed to file briefs and the matter was scheduled for a hearing.

### III.

Grant contends that the Bankruptcy Court by its orders of April 22 and September 20, 1983 granted his claim priority over all administrative expenses, demands or claims in the Chapter 7 and Chapter 11 proceedings, except the administrative expenses of the Chapter 7 proceedings; that the allowance of his claim was in accordance with and as provided for by 11 U.S.C. § 364(c); and that when the time for appeal from those two orders had passed, the findings became final and binding. Appellants assert that the language of the 1983 orders does not grant the priority allowed by § 364(c) and that the order merely provided that the claim of Grant was to be considered as a part of the regular Chapter 11 administrative expenses as provided for in 11 U.S.C. § 503(b)(1)(A), to share *pro rata* with the other administrative expenses, including the claims of the United States for taxes incurred by the bankrupt estate.[4] Further, appellants assert that the Bankruptcy Court did not give the notice and hold the hearing as required by § 364(c) prior to the making of the loan or advance.

### A.

If, in fact, the language of the orders of April and September, 1983 do give and grant the priority permitted under § 364(c)

---

**3.** The claim of United States is for withholding and other taxes.

**4.** 11 U.S.C. § 503, in part, provides:
§ 503. Allowance of administrative expenses
(a) An entity may file a request for payment of an administrative expense.
(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title [11 USCS § 502(f) ], including—
(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;
(B) any tax—
(i) incurred by the estate, except a tax of a kind specified in section 507(a)(6) of this title; or
(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case;

to the claim of Grant, then that determination is final and binding on appellants and all other parties and any attempt to now appeal the grant of priority is not timely. That is, if the orders of 1983 do establish the claim as having the priority permitted by § 364(c), then this appeal from the order of March 22, 1985 cannot challenge the grant of priority provided for in the 1983 orders. However, if the orders of 1983 were not effective in establishing the § 364(c) priority, then the issue of whether the Bankruptcy Court erred in granting such a priority by the March 22nd and April 10, 1985 orders is the proper issue before the Court.

### B.

Rule 8001 of the Bankruptcy Rules provides for an appeal, as of right, from a final judgment, order, or decree of a bankruptcy judge to the district court by the filing of notice. Rule 8002 requires that the notice of appeal shall be filed with the Clerk of the Bankruptcy Court within 10 days of the date of the entry of the judgment, order, or decree appealed from. Paragraph (c) of Rule 8002 gives the Bankruptcy Court the authority to extend the time for filing the notice of appeal for a period not to exceed 20 days from the expiration of the time otherwise provided by the Rule. The rule "makes clear that compliance with the filing requirement is an absolute prerequisite to the district court's jurisdiction to hear the appeal." *In the Matter of Colorado Energy Supply, Inc. v. Price*, 728 F.2d 1283, 1285 (10th Cir.1984); *Union Trust & Savings Bank v. Jasperson*, 37 B.R. 956 (N.D. Iowa 1984); *Re: Soter*, 31 B.R. 986 (D.C.Vt.1983).

As is often the case, had the order of April 22, 1983 used the language of 11 U.S.C. § 364(c), or if the order had set forth in undeniable language that the claim was granted the priority permitted by § 364(c), the question would be at an end. Grant says that the record, the language of the order as used, and all that has heretofore transpired makes it clear that the Bankruptcy Court intended to and did in fact allow the claim with the priority provided for by § 364(c). Appellants say otherwise. They argue that the 1983 orders only allowed the Grant claim as an administrative expense, to share with other administrative expense claims in the Chapter 11 proceedings.

Appellants also argue that Grant should have applied to the Court for the § 364(c) authorization for the loan and obtained approval for the priority before advancing the funds.

Grant responds to this argument by saying that the Court had the power and authority to grant the priority after the loan had been made, and that had he followed the course of first applying for approval, the operation would have shut down and the business closed before the Court could have acted on the application; that the payrolls were due and there were no funds to meet them; that he was advised of this just before payroll time; that the only available source for the funds was an advance by him; that no person has been prejudiced by his advancing the funds prior to obtaining the authorization, but all concerned had benefited. He argues that the business would have been forced into liquidation, and it would have lost the opportunity to be sold, as it later was, as a going operation. Further, Grant argues that the appellants are now too late in raising the issue of the Bankruptcy Court's authority to grant the priority provided by § 364(c) after the fact—after the loan was made. Grant asserts that the failure to timely appeal the 1983 orders mooted the issue of whether the Bankruptcy Court should have granted the priority and whether it could ratify and approve the loan after it had been made.

### C.

The orders of 1983 were final orders for purposes of appeal and binding on all parties until reversed by timely appeal. Those orders precluded "... the parties or their privies from relitigating issues that were or could have been raised ..." and such is not "... altered by the fact that the judg-

ment may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). The orders of 1983 were final " '... not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1876), as cited in *Nevada v. United States,* 463 U.S. 110, 130, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509. Even if we assume that in the 1983 orders there was an " 'erroneous conclusion' reached by the Court ... '[a] judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review....' " *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 325, 47 S.Ct. 600, 604, 71 L.Ed. 1069 (1927), as cited in *Federated Department Stores, Inc., supra,* 452 U.S. at 398, 101 S.Ct. at 2428. The prior judgment put an end to the question ... " 'which cannot again be brought into litigation between the parties upon any ground whatever.' " *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), as cited in *Nevada v. United States, supra,* 101 S.Ct. at 2918.

### D.

■ All concerned agree that the Chapter 7 administrative expenses take precedence over the Chapter 11 administrative expenses.[5] Nor is there any dispute that had Grant merely advanced the funds or made the loan in question in order to meet the payrolls, the advance or loan would have, without more, qualified as an administrative expense in the Chapter 11 proceedings. That is, no prior court approval was necessary. Nor would he have been required to seek approval by motion, nor would a notice or hearing, or court order been required to have said loan declared an administrative expense. An extension of credit to the Trustee or an advance of funds by the Trustee for the benefit of the bankrupt estate automatically qualified as an administrative expense, without any prior application or approval by the bankruptcy court, as provided for by § 364(a), (b). See also *In Re J.C. Groendyke Co.,* 131 F.2d 573 (7th Cir.1942); *In Re Allen Carpet Shops, Inc.,* 27 B.R. 354 (B.C.N.Y. 1983); *In Re Kennedy's Franchise Corp.,* 21 B.R. 461 (B.C.W.D.Va.1982). No one questions that the Trustee was authorized to operate the business under 11 U.S.C. § 1108. Hence, had Grant loaned the funds as provided for by 11 U.S.C. § 364(a),[6] as appellants now assert he did, and not pursuant to 11 U.S.C. § 364(c), as Grant contends he did, then his application to have the loan established as one with the aforesaid priority was a complete waste of judicial time and energy. Unless Grant sought to have his claim granted the priority permitted by § 364(c), and unless the Court intended and granted that priority, then the notice, hearing and orders were utterly useless and of no effect. Without any action by him or by the Court, his claim for the loan would have shared equally with his claim for compensation and expenses incurred. One would hardly suggest that the bankruptcy judge and court

---

5. 11 U.S.C. § 726(b) provides, in part:
   that in a case that has been converted to this Chapter [11 U.S.C. § 701 et seq.] under section 1112 or 1307 of this title [11 U.S.C. § 1112 or 1307] administrative expenses incurred under this chapter [11 U.S.C. 701 et seq.] after such conversion, have priority over administrative expenses incurred under any other chapter of this title or under this chapter [11 U.S.C. § 701 et seq.] before such conversion and over any expenses of a custodian superseded under section 543 of this title [11 U.S.C. § 543]

6. 11 U.S.C. § 364(a)
   § 364. Obtaining credit
   (a) If the trustee is authorized to operate the business of the debtor under section 721, 1108, or 1304 of this title [11 USCS §§ 721, 1108, 1304], unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title [11 USCS § 503(b)(1) ] as an administrative expense.

personnel, and counsel for Grant, were so gullible [7] or so easily deceived that they did not know the advance or loan, without prior approval or action on their part, already fell into the classification of administrative expenses in the Chapter 11 proceedings under 11 U.S.C. § 503(b), as provided for under 11 U.S.C. § 364(a). Grant argues that to follow appellants' argument is to disregard and declare as meaningless the language of the April 22, 1983 order; i.e., "as the same were actual and necessary costs and expenses of preserving the estate, and which are subordinanted only to allowed administrative expenses in these Chapter 7 proceedings." That is, after the Chapter 7 allowed administrative expenses, this claim was the first to be paid. Too, if the advance or loan by Grant was not in fact entitled to the priority of § 364(c), why did appellants not attack the return of the $10,000.00 part of the advance or loan. For, if the $36,479.45 is not entitled to § 364(c) priority, neither would the $10,-000.00 be entitled to it.

### IV.

The parties agree that if in fact the orders of 1983 granted the priority permitted by § 364(c), then the appeal should be dismissed as untimely. The parties further agree that the orders of the Bankruptcy Court of March and April 1985 did, in fact, provide and award to Trustee Grant the priority of § 364(c) as to the claim of $36,-479.45, with interest. As to the 1985 orders, appellants contend the § 364(c) priority should not have been awarded.

It is perfectly clear from the 1985 decisions and orders of the Bankruptcy Court that it intended to and did provide that the funds advanced by Trustee Grant were entitled to § 364(c) priority. In its orders of 1985, the bankruptcy court directed the Chapter 7 Trustee to forthwith make payment to Grant the amount of his claim for the advance, saying it had been intended in 1983 to provide for the priority allowed by § 364(c). He referred to it as a "super priority," and said:

There would be little fund at all if Mr. Grant had not operated the business and put forth his own funds to keep it going at a crucial time. It is a greedy creditor that seeks to be paid ahead of him.

The debtor at payroll time one week [8] did not have the funds to meet it and for motives which were surely pure, the Trustee loaned the Debtor his personal funds for this purpose. Obviously, he should have obtained permission of the Court, but at the late hour to draw the papers and present them would have been time consuming. Approximately 300 seamstresses and other employees were expecting to be paid. Had there been a hearing, the Court would have granted a "super priority" to a lending institution ... or the Trustee for the loan pursuant to 11 U.S.C. § 364(c).

No one suggests that Grant did not advance the funds in good faith and for the purpose to preserve the business and keep it operating, without which the operation would have ceased.

Any challenge to the allowance with a suggestion the Bankruptcy Court would not have granted the § 364(c) approval had there been sufficient time for the Trustee to have applied therefor prior to the advance, is without merit. (See statement of the bankruptcy judge above). The fact is, no such challenge is here made. The bankruptcy judge's decision makes it clear this was the classic case for such approval and that he would have granted it at the time, had the application been made. He did grant the approval after the loan.

The Court need not decide whether the 1983 orders granted the priority contended for, as it is agreed the 1985 orders grant the § 364(c) priority. Hence, we turn to whether the Court was justified in granting such a priority.

### V.

Section 364(c) provides that if the Trustee is unable to obtain credit which would be

---

7. Gullibility, says Bertrand Russell, in the face of repeated assertions, is one of the curses of the modern world.

8. The advance was for two separate weeks.

allowable as an administrative expense—and the Trustee here was not able to do so—"the Court, after notice and hearing, may authorize the obtaining of credit ... with priority over any or all administrative expenses." But the courts "do not read these statutory words with the ease of a computer," for there "is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966); *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). See also *Katchen v. Landy,* 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). Bankruptcy courts "deal in a summary way with 'matters of an administrative character, including questions between the bankrupt and his creditors ... in the ordinary course of the administration of the bankrupt's estate.'" *Katchen v. Landy,* 382 U.S. at 327, 86 S.Ct. at 471, quoting *Taylor v. Voss,* 271 U.S. 176, 181 (1926). The essence of equity is the power to do equity. It is a blend of what is fair and what is just. Flexibility, rather than rigidity, has distinguished it. "In equity, as nowhere else, courts ... look to the practical realities and necessities inescapably involved in reconciling competing interests ..." *Lemon v. Kurtzman,* 411 U.S. 192, 201, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973). Giving "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction," is "enough to indicate why it would be inequitable" to deny Grant the preference which has been granted to him and to which he is entitled. *Bank of Marin v. England, supra,* 385 U.S. at 103, 87 S.Ct. at 277. Likewise, it would be, indeed, unjust to fail to allow Grant the priority, for it would be an unjust enrichment to the others having administrative expenses and other claims. *Spring Construction Company, Inc. v. Harris,* 614 F.2d 374, 378 (4th Cir.1980).

### A.

Viewing the right to grant priority, and the action in granting it as an equitable matter, the Court turns to whether the failure to give notice and hold a hearing as a prerequisite to obtaining the funds is fatal, or whether the Court may ratify the action and grant the priority after the fact. Generally speaking, prior notice is not jurisdictional. The better reasoning holds that the bankruptcy court may approve the loan and grant the priority after the fact, where the loan was for an approvable purpose and benefited the business.

In dealing with the priority permitted by § 364(c), *In the Matter of EDC Holding Co.,* 676 F.2d 945, 948 (7th Cir.1982), the Court pointed out that the lender must act in good faith, and the Court could not grant a "special priority without showing that the proceeds of the loan would be used for a proper purpose." In *Wolf v. Nazareth Fair Grounds & Farmers' Market, Inc.,* 280 F.2d 891, 892 (2d Cir.1960), dealing with similar provisions of the Bankruptcy Act, the Court said it had previously held that an unauthorized loan may receive priority in such unusual circumstances as would justify equitable relief, as it was not disputed that the proceeds of the loan were "instrumental in enabling Nazareth to continue as a going concern," and that "Nazareth's creditors have been benefited by this continuation." Continuing, the Court pointed out that "this case presents those elements which ... would be necessary to sustain an order retroactively approving an unauthorized loan." Earlier, in *In Re American Cooler Co.,* 125 F.2d 496, 497 (2d Cir.1942), in dealing with the right of the Bankruptcy Court to grant a priority to a loan after the loan had been made, the Court pointed out that an unauthorized loan may be granted priority in unusual circumstances. See also *Northern Finance Corporation v. Byrnes,* 5 F.2d 11, 13 (8th Cir.1925), holding that where the Court finds an unauthorized expenditure to have been beneficial to the estate, it may adopt and allow it, notwithstanding previous lack of authority. In *Amick v. Hotz,* 101 F.2d 311 (8th Cir.1939), the Court in dealing with a lien placed on property, said that the property should not be relieved from a charge made upon it, in good faith, for its protection and preservation. It

quoted with approval the language set out above from *Northern Finance Corporation v. Byrnes, supra.* Further, in *Amick v. Hotz*, the Court dismissing the failure to give notice before authorizing a borrowing, and pointed out that it could find "no case which holds that notice is jurisdictional and that such an order, entered without notice, is void." *Amick v. Hotz*, 101 F.2d at 313.

### B.

The evidence is uncontradicted that the loan was a necessity if the business was to continue as an operation; that the funds were used solely to cover wages which were due; that funds were not available from any other source; that time was of the essence; that all interested persons benefited from the loan, and no one was prejudiced thereby; that the sale of the business as a going concern was a benefit to all concerned; and that had there been sufficient time and the Trustee had applied for the issuance of a court order, the bankruptcy judge unquestionably would have issued the authority for the § 364(c) borrowing. The action of the bankruptcy judge in granting the priority provided for by § 364(c), after the fact, is therefore AFFIRMED.